WILLIAM DICKINSON *vs.* CITY OF WORCESTER.

A declaration for the obstruction of " a small stream of water " running through the plaintiff's land is not sustained by proof that the flow, through a ditch, of water which has accumulated from rains or the melting of snow or the underdraining of the land has been obstructed.

No right exists to conduct water, which accumulates upon wet and swampy ground from rains or the melting of snow or underdraining, through an artificial channel over the adjoining land of another person, unless an easement has been acquired.

TORT. The declaration alleged that the plaintiff was the owner of a lot of meadow land lying on the north side of Austin Street in Worcester; that there is and always has been a small stream of water running through the centre thereof to and crossing Austin Street; that the waters of the stream, collected in said meadow and from other lands adjoining the same, have for more than twenty-five years been accustomed to flow and did rightfully flow off southerly in a drain and otherwise through the land now covered by Austin Street, freely, so that the plaintiff's meadow was kept effectually drained and produced large crops of grass; that before the 1st of January 1856 Austin Street had been constructed and laid out by individuals, with a narrow culvert under the same, through and under which the waters of said stream were accustomed to pass off in such a manner that the plaintiff's meadow was kept tolerably dry and no material injury was done to the grass; that in January

1856 the defendants laid out Austin Street as a town way, and have since that time wrongfully permitted said culvert to become filled up, and the waters of the stream to be obstructed and set back upon the plaintiff's meadow, whereby the same has been overflowed with water and rendered incapable of drainage, to the great injury of the crops; that the plaintiff has requested the defendants to remove the obstructions, which they have refused to do; whereby he has suffered great damage.

At the trial in the superior court, before *Vose*, J., there was evidence tending to show that the plaintiff's meadow was low, wet and swampy ground, bounded on the east by high hills, which contained springs; that for more than twenty years there had always been a channel passing out of the meadow where the present culvert is, in which water ran at nearly all seasons of the year; that the meadow was drained many years since by the adoption of a system of underdraining; that the water passing through the culvert was not surface water from the hills; that the culvert had become filled up in part since Austin Street was made a public street; and that the defendants were requested to remove the obstruction. The above facts were all in controversy. It also appeared that Austin Street was laid out and the culvert constructed as it now is by private individuals some years before it was accepted as a public way, which was in 1857, and that the defendants have not changed the same since.

The defendants, amongst other things, requested the court to instruct the jury that they were not liable for not removing obstructions in a culvert under a street which accumulated there without their act or agency; and that the jury must be satisfied that there was a stream of water running through the plaintiff's lot, and to and across Austin Street, and that it must be a permanent stream of water, not one which was accumulated by rains or the melting of snow or underdraining of the land. The judge declined so to rule, and instructed the jury that "if the land of the plaintiff was naturally wet, swampy or marshy, and there was an accumulation of water at the end of the lot, near the north line of Austin Street, caused by the nature of the

ground and the system of underdraining by the plaintiff to get rid of the water existing at the time when Austin Street was constructed and established as a public street, and which had had its outlet for many years across the land over which the street was located, and a culvert under Austin Street was necessary to permit the flow and discharge of this water from the plaintiff's land, then it was the duty of the city to construct and maintain a culvert there, sufficient and in a condition for that purpose, and to keep such culvert free and clear of all obstructions materially preventing the flow of the water."

The jury returned a verdict for the plaintiff, and the defendants alleged exceptions.

*S. P. Twiss*, for the defendants.

*P. C. Bacon & P. E. Aldrich*, for the plaintiff, cited *Sprague* v. *Worcester*, 13 Gray, 193, and cases there cited; *Rowe* v. *Granite Bridge*, 21 Pick. 348.

BIGELOW, C. J.   We are of opinion that the exceptions in this case are well taken, and that the case must be sent to a new trial.   The declaration alleges that there is and always has been a small stream of water running through the centre of the plaintiff's land, and that the defendants by their negligent and wrongful acts have suffered the outlet or culvert through which the water of this stream had been accustomed to flow to be stopped up; whereby the plaintiff's land was injured.   The gist of the action, therefore, was the obstruction of this alleged stream or watercourse.   By the statement of the evidence offered at the trial, it appears that the existence of this stream or watercourse was in contention between the parties.   That it was incumbent on the plaintiff to prove the fact, cannot be doubted.   Unless he did so, there would be a fatal variance between his declaration and proof.   *Ashley* v. *Wolcott*, 11 Cush. 192.   In this state of the case, the defendants were clearly entitled to an instruction in substance similar to one for which they asked, which was, that the jury must be satisfied that there was a stream of water running through the plaintiff's lot described in the writ, or some part thereof, and that it must be a permanent stream of water, and not that which is accumulated by

rains or the melting of snows, or by artificial underdraining of the plaintiff's land. The refusal of this instruction was erroneous, because it left the case without any definite or distinct rule to enable the jury to distinguish between a stream or watercourse and a mere occasional flow of water over the surface. *Luther* v. *Winnisimmet Co.* 9 Cush. 171.

Nor was this the only error. The instructions given to the jury in effect authorized them to find a verdict for the plaintiff, although no stream or watercourse, in the legal sense of those words, was proved to have existed in the plaintiff's land. No action can be maintained for changing the course or obstructing the flow of mere surface water by erections on adjoining land. *Parks* v. *Newburyport,* 10 Gray, 28. *Flagg* v. *Worcester,* 13 Gray, 601. It makes no difference in the application of this rule that land is naturally wet and swampy. A conterminous proprietor may change the situation or surface of his land by raising or filling it to a higher grade, by the construction of dikes, the erection of structures or by other improvements which cause water to accumulate from natural causes on adjacent land and prevent it from passing off over the surface. Such consequences are the necessary result of the lawful appropriation of land, whatever may be its nature, and, although they may cause detriment or loss to others, it is *damnum absque injuria,* and affords no ground of action. Nor can a party gain a right to the flow of surface water over his neighbor's land by collecting it in drains or culverts or artificial channels, unless he maintains them for a length of time sufficient to acquire a right or easement by adverse user. He cannot by his own act merely, without the assent or acquiescence of the adjoining owner, change their relative rights and duties, and convert a flow of surface water into a stream, with all the legal incidents of a natural watercourse. These principles were not stated to the jury with fulness and accuracy, nor were the instructions such as to lead the jury to an intelligent application of the law to the facts in proof. *Exceptions sustained.*