## GEORGE W. CHADEAYNE AND WIFE *vs.* PHILANDER ROBINSON AND WIFE.

New Haven Co., June T., 1887. PARK, C. J., CARPENTER, PARDEE, LOOMIS and BEARDSLEY, Js.

The owner of land has a right, by alterations of its surface, or other modes of obstruction, to prevent the inflow upon it of surface water from rains and snows, although the effect is to turn it or set it back, upon the adjoining land.

It does not affect the case that the obstruction is by means of a tight board fence erected on the line between his own land and that next above him, upon a part of the line that, for the purpose of fencing, had by the agreement of the parties been set to the adjoining owner.

[Argued June 7th—decided July 15th, 1887.]

ACTION for obstructing the flow of surface water upon the defendants' land, and thereby setting it back upon the. adjoining land of the plaintiffs; brought to the Superior Court in New Haven County, and heard before *Stoddard, J.* Facts found and judgment rendered for the defendants,

and appeal by the plaintiffs. The case is sufficiently stated in the opinion.

*E. Zacher* and *J. P. Thompson*, for the appellants.

1. Two rules are recognized by the courts of the different states in determining whether surface water may be obstructed in its natural flow, retained or diverted, to the injury of the property of another, namely, the civil law and the common law rule. "By the civil law the lower of two adjacent estates owes a servitude to the upper to receive all the natural drainage; and the lower owner cannot reject nor can the upper withhold the supply, although either, for the sake of improving his land according to the ordinary modes of good husbandry, may somewhat interfere with the natural flow of the water. Interference with the natural flow of surface water is regarded as a nuisance, for which nominal damages may be recovered without proof of actual damage. The courts of Pennsylvania, Illinois, North Carolina, California and Louisiana have adopted this rule, and it has been referred to with approval by the courts of Ohio and Missouri." Gould on Waters, § 266. But the general common law rule is that "the right of an owner of land to occupy and improve it in such manner and for such purposes as he may see fit, either by changing the surface, or the erection of buildings or other structures thereon, is not restricted or modified by the fact that his own land is so situated with reference to that of adjoining owners that an alteration in the mode of its improvement or occupation in any portion of it will cause water, which may accumulate thereon by rains and snows falling on its surface or flowing on to it over the surface of adjacent lots, either to stand in unusual quantities on other adjacent lands, or pass into and over the same in greater quantities or in other directions than they were accustomed to flow." Gould on Waters, § 267. This court, in the case of *Adams* v. *Walker*, 34 Conn., 466, held that a person cannot grade his lot and thereby turn surface water upon another's land to prevent it from flowing into his well or for

any other lawful purpose. By this decision Connecticut would seem to have adopted the civil law rule. In the case at bar the finding of the court shows that "the defendants' divisional fence constituted the substantial obstruction to its flow. * * * But except for the erection of said fence by the defendants the damage to the plaintiffs would not have occurred." Evidently, if the decision in *Adams* v. *Walker* was in accordance with the civil law rule, the judgment in this case should have been for the plaintiffs. But in the case of *Grant* v. *Allen*, 41 Conn., 156, this court held that "the right of the owner of land to determine the manner in which he will use it, or the mode in which he will enjoy it, the same being lawful, is too high in character to be affected by considerations growing out of the retention, diversion or repulsion of mere surface water, the result of falling rain or melting snow." This decision would seem to incline to the common law rule, if not to adopt it, and to overrule the decision in *Adams* v. *Walker*, and it would perhaps be decisive in this case were it not for other facts that appear in the finding.

2. These facts are found on the record: "In 1884 the parties agreed upon a division of the fence between them, the plaintiffs taking the easterly and the defendants the westerly part. The defendants first erected a wire fence on their part, and after that was destroyed built a close board fence, higher and tighter than the fence of the plaintiffs, and extending easterly two or three feet beyond the point of division and uniting with the plaintiffs' board fence then existing. The fence of the defendants had a solid base-board of two-inch stuff, reaching wholly to the ground, and forming a substantial obstruction to the flow and movement of the waters. After the defendants built their wire fence the plaintiffs built a close board fence on their portion, but leaving an opening of two or three feet between their fence and the wire fence of the defendants. The agreed place of dividing the fence was at or very near the place where the greater quantity of water was accustomed to flow from the plaintiffs' to the defendants' land, and the defendants'

fence constituted the substantial obstruction to its flow, although the plaintiffs' fence in some degree assisted in stopping the flow. But except for the erection of said fence by the defendants the damages to the plaintiffs would not have occurred." It is evident that had not the defendants interfered with the opening the water could not have ponded and the injury would not have taken place. We submit that this construction of the fence beyond the point of division was not a lawful use of their own land by the defendants so as to bring the case within the decision in *Grant* v. *Allen*, but it was an unlawful use of the land of the plaintiffs. The cases cited by the court in that case show that all the acts by which the water was obstructed were done in the lawful use of the land by the defendants. In *Dickinson* v. *City of Worcester*, 7 Allen, 19, the defendant permitted a culvert under the street to become filled up, and the flow of water was thereby obstructed, and the court held, (p. 22,) "that no action can be maintained for changing the course or obstructing the flow of mere surface water by erections on adjoining land." And in *Gannon* v. *Hargadon*, 10 Allen, 106, the defendant placed turfs in ruts upon his own land and "thereby caused the water to flow off upon the plaintiffs' land," and the court held that "the obstruction of surface water or an alteration in the flow of it affords no cause of action in behalf of a person who does not act inconsistent with the due exercise of dominion over his own soil."

*W. C. Case* and *W. H. Ely*, for the appellees, cited— *Grant* v. *Allen*, 41 Conn., 160; *Luther* v. *Winnisimmet Co.*, 9 Cush., 174; *Dickinson* v. *City of Worcester*, 7 Allen, 22; *Gannon* v. *Hargadon*, 10 id., 109; *Flagg* v. *City of Worcester*, 13 Gray, 601; *Murphey* v. *Kelley*, 68 Maine, 521; *Swett* v. *Cutts*, 50 N. Hamp., 439; *Chatfield* v. Wilson, 28 *Verm.*, 49; *Bowlsby* v. *Speer*, 31 N. Jer. Law, 351; *Goodale* v. *Tuttle*, 29 N. York, 467; *Barkley* v. *Wilcox*, 86 id., 140, 148; *Eulrich* v. *Richter*, 37 Wis., 226; *Lessard* v.

*Stram*, 62 id., 112; *Kansas City &c. R. R. Co.* v. *Riley*, 33 Kansas, 374; *Benthall* v. *Seifert*, 77 Ind., 302.

PARDEE, J. This is a complaint for obstructing the passage of surface water flowing upon the defendants' land, whereby it was set back upon the land of the plaintiffs. Judgment was rendered for the defendants, and the plaintiffs have appealed. The following are the reasons of appeal assigned :—

1. That the court erred in ruling as a matter of law, upon the facts found, that there was *damnum absque injuriâ* and that therefore the plaintiffs were not entitled to recover damages.

2. The court having found that the course of the surface water, coming from the lands south of the plaintiffs' and flowing across their land, was thence upon the defendants' land, and that the defendants constructed their fence two or three feet beyond the point of division and upon the plaintiffs' line, and that the agreed place of dividing said divisional fence was at or very near the place where the greater quantity of water was accustomed to flow from the plaintiffs' to the defendants' land and the defendants' divisional fence constituted the substantial obstruction to its flow, and that except for the erection of said fence by the defendants the damage to the plaintiffs would not have occurred, and that material damage was done to and in the house of the plaintiffs by said divisional fence stopping the water, erred in ruling that, as a matter of law, the plaintiffs were not entitled to damages.

The parties are severally owners of adjoining village lots with a house upon each. Except for the intervention of man surface water would run from the plaintiffs' lot upon that of the defendants. They made an agreement as to the portion of division fence to be built and maintained by each. The defendants built a tight board fence two or three feet longer than the agreement required from them for the purpose of closing an opening left by the plaintiffs. The

agreed place of division of the fence was at or near the place where the greatest part of the surface water flowed, and the defendants' fence prevented the usual flow and ponded the water on the plaintiffs' land to their material damage.

The general common law rule in reference to surface water is that stated in Gould on Waters, § 267, as follows :— " The right of an owner of land to occupy and improve it in such manner and for such purposes as he may see fit, either by changing the surface, or the erection of buildings or other structures thereon, is not restricted or modified by the fact that his own land is so situated with reference to that of adjoining owners, that an alteration in the mode of its improvement or occupation in any portion of it will cause water, which may accumulate thereon by rains and snows falling on its surface, or flowing on to it over the surface of adjacent lots, either to stand in unusual quantities on other adjacent lands, or pass into and over the same in greater quantities or in other directions than they were accustomed to flow."

This rule was accepted as the law by this court in *Grant* v. *Allen*, 41 Conn., 156; the court there saying that " the right of the owner of land to determine the manner in which he will use it, or the mode in which he will enjoy it, the same being lawful, is too high in character to be affected by considerations growing out of the retention, diversion or repulsion of mere surface water, the result of falling rain or melting snow."

Under that rule it is the right of the defendants to erect for the entire depth of their lot a structure which will be a perfect barrier to surface water. Of course that which they may do perfectly and permanently, they may do imperfectly and temporarily; and the plaintiffs must accept the consequences. And this rule is neither suspended nor modified in the present case by the agreement as to the portion of fence to be constructed by each. That agreement was not intended, and is not by either party to be interpreted, as a permanent

quit-claim by the other of the right to improve his property to the fullest extent.

There is no error in the judgment complained of.

In this opinion the other judges concurred.