TIDE WATER OIL SALES CORPORATION *vs.* ABE
SHIMELMAN ET ALS.

MALTBIE, C. J., HAINES, HINMAN, BANKS and AVERY, Js.

Argued October 21st, 1931—decided January 19th, 1932.

*Frederick J. Rundbaken* and *Morris Blumer*, with whom, on the brief, was *Moses Hartzmark*, for the appellant (plaintiff).

*Reuben Taylor*, with whom was *William M. Pomerantz*, for the appellants (defendants).

MALTBIE, C. J. The plaintiff and the defendants own adjoining tracts of land. The complaint contains two counts and the trial court gave judgment for the defendants upon the first count and for the plaintiff upon the second count, from which judgment both parties have appealed. The basis of the plaintiff's claim for relief under the first count is that for a long time before the premises of either party were improved or built upon as they now are, the land of the plaintiff and other lands beyond were drained of surface water by means of an open drain or ditch running across the defendants' property, but that in the construction by the defendants of a large garage upon their premises and the filling in of the land in connection therewith that drain or ditch was filled up and closed, with the result that the surface water could no longer flow away from the plaintiff's land, as it was accustomed to do, but accumulated upon it to the plaintiff's damage.

The trial court in its finding has described the course followed by the water across the plaintiff's land, before it was affected by artificial improvements, as

a line of lowest elevation, not exactly a ditch but more accurately described as a swale or natural depression, in certain places ten inches wide and approximately six inches deep and in other places not so wide or deep; and it has described the course across the defendants' land as of substantially the same width and depth, from which the defendants' predecessor in title had at times mowed grass and weeds to cause the water to flow more freely. While the defendants attack these findings in certain respects, we cannot say they are not supported by the evidence when the fact that the trial court visited the premises is also taken into consideration, and we can make no material change in them.

Under the first count the question of law necessarily presented, and determinative of the issue, is the plaintiff's right as an owner of lands from which surface water flows away over the defendants' premises as described in the finding to relief against an obstruction of that flow. The plaintiff does not question that, under our law as it has long been settled, an owner of land has the right to occupy and use it as he sees fit, generally speaking, by changing its surface or erecting structures upon it, despite the fact that such a use will cause surface water falling upon it or naturally flowing over it from adjacent lands to accumulate upon the latter or to pass over them in changed direction or quantity. *Grant* v. *Allen*, 41 Conn. 156; *Chadeayne* v. *Robinson*, 55 Conn. 345, 350, 11 Atl. 592; *Rutkoski* v. *Zalaski*, 90 Conn. 108, 96 Atl. 365. Not merely is this principle the settled law of this jurisdiction, but whatever balancing of considerations of public good or principles of abstract justice might be indulged in, we cannot perceive that adherence to it through the years has worked more injury to landowners than would be the adoption of a stricter limi-

tation upon their rights, or has in fact retarded the natural development of this State, while a departure from its essential basis at this time would tend to upset one of the foundations upon which that development has proceeded. Our consideration of the plaintiff's claim must necessarily proceed upon the basis of the law so established.

It must be recognized that the great majority of courts throughout the country have held that a duty rests upon a lower proprietor of land over which surface water runs through a natural drainway not to close it up so as to prevent the surface water from an upper proprietor flowing off in it. 27 R. C. L. 1148; note, 22 L. R. A. (N. S.) 791; L. R. A. 1917A, 517. However, such a right, if it exists, must, consistently with the general principles of our law, be subject to certain limitations. It is obvious that, unless a tract of land is substantially flat, a situation which does not exist as to most of the area of this State, surface water draining from it must naturally seek the lines of lowest elevation and run off through depressions, narrow or broad, shallow or deep, and, if the land be left undisturbed, leave traces of its course of considerable permanency and discoverable upon careful examination, or else it will flow down from the higher land to the lower through many little channels each in itself of little significance but still traceable in the soil. Broadly to hold that wherever surface water in its natural drainage follows depressions in the land or creates by its flow a discernible channel, the lower proprietor may not check that flow, would go far to limit the principle governing interference with the flow of surface water we have stated, farther than any need of public policy can be seen to require. Moreover, the desirability of certainty in rights demands that before a servitude of

such a nature as that here claimed can be imposed upon land, the existence of the circumstances giving rise to it must be clearly apparent upon an inspection of the premises. It must necessarily follow that no right to prevent interference with the drainage of surface water over the land of another can be asserted unless the servitude "be clearly and permanently impressed upon the property so as to be plainly visible to the intending purchaser." These words we quote from Farnham, an exponent of the doctrine that relief should be given against the obstruction of surface water which has taken a definite course in draining away. 3 Farnham, Waters, p. 2599.

We have never had before us the precise question as to the right of an upper proprietor to prevent a lower proprietor from obstructing a natural drainage channel or depression through which surface water flows. In *Robertson* v. *Lewie,* 77 Conn. 345, 59 Atl. 409, we upheld the right of an upper proprietor to an injunction against the obstruction of a ditch through which water ran from his premises across those of the defendant; but, while the opinion does not so state, the brief of the appellant shows that he was basing his appeal upon claimed rights and duties existing as to an artificial ditch and it was with the case so made that we were dealing. In *Byrne* v. *Farmington,* 64 Conn. 367, 30 Atl. 138, we held that a town was not liable in damages to a landowner for permitting a culvert under a highway it had constructed to become stopped by reason of which water accumulated in a swale which adjoined the highway and in which the plaintiff's house stood, and we based our decision upon the ground that the town had at least the rights of a lower proprietor, which would give it the right to build the highway so as to cut off the flow of water and to close the culvert permanently

if it saw fit to do so; and we quoted from *Dickinson* v. *City of Worcester*, 89 Mass. (7 Allen) 19, 22, as follows: "No action can be maintained for changing the course or obstructing the flow of mere surface water by erections on adjoining land. . . . It makes no difference in the application of the rule that the land is naturally wet and swampy. A conterminous proprietor may change the situation or surface of his land by raising or filling it to a higher grade, by the construction of dykes, the erection of structures or by other improvements which cause water to accumulate from natural causes on adjacent land and prevent it from passing off over the surface." Reason and the policy of our decisions require that if any right of an upper proprietor to prevent the obstruction of natural drainage be recognized it is limited to situations where the drainway is well enough defined to attract the attention of a landowner or purchaser upon a casual inspection, and is characterized by those attributes, except the source and flow of the water, which we have noted as the elements necessary to constitute a watercourse, that is, a definite channel with a bed and banks or sides, if not at all points, yet sufficient to mark clearly that channel. *Gillett* v. *Johnson*, 30 Conn. 180, 183; *Chamberlain* v. *Hemingway*, 63 Conn. 1, 5, 27 Atl. 239; *Thompson* v. *New Haven Water Co.*, 86 Conn. 597, 602, 86 Atl. 585. Even if we should recognize a right of an upper proprietor in any case to have a natural drainway through which surface water flows kept open, the finding presents a situation which we cannot hold to be within the limitations we have stated. The judgment for the defendants upon this count must stand.

In the second count it was alleged that by reason of filling in upon the defendants' premises the land had been raised above that of the plaintiff and sur-

face water from the defendants' premises has been diverted and caused to flow onto the plaintiff's land. With reference to this claim the finding of the court is that the defendants, in filling in the westerly portion of their land, did so in such an irregular and uneven manner that there were holes and pockets left; the land was raised by the filling in along the boundary of the defendants' property opposite the plaintiff's land from two to two and one half feet; because of the uneven manner in which the filling was done and the holes and pockets therein, water falling on the land and from the buildings upon it collected in these holes and pockets and instead of running off in the direction it would have naturally taken, away from the plaintiff's land, was turned toward it in an increased volume, ran down the embankment caused by the fill along the plaintiff's boundary onto its property, carrying sand and dirt with it, and thence passed to the lower line of the plaintiff's property; and these waters thus imposed an increased burden upon the plaintiff. The defendants attack this finding in certain respects, but, as already noted, the trial court viewed the premises and states that it made its findings in part based upon that inspection; and no material change can be made in them. The cause of action arising out of these facts is not one based upon the right of a landowner to repel surface water which would naturally flow upon his property to the injury of one from whose land it flows, as in *Chadeayne* v. *Robinson*, and *Rutkoski* v. *Zalaski*, *supra*; it falls rather within the principle first announced in *Adams* v. *Walker*, 34 Conn. 466, where we held that one has no right by the grading of his land to turn the surface water which ordinarily falls upon it so that it would run upon the adjoining land of another to his injury, a principle which has been developed

and defined in *Stein* v. *Coleman,* 73 Conn. 524, 48 Atl. 206; *Goldman* v. *New York, N. H. & H. R. Co.,* 83 Conn. 59, 63, 75 Atl. 148; *Shea* v. *Gavitt,* 89 Conn. 359, 366, 94 Atl. 360, and *Melin* v. *Richman,* 96 Conn. 686, 115 Atl. 426. In the *Goldman* case we said (p. 63): "But the complaint presents no case for a recovery for wrongfully causing the water to flow upon the plaintiff's land in manner or quantity different from its natural flow. If the defendant is wrongfully doing this, the plaintiff has a cause of action, regardless of the former existence of the ditch or its present obstruction." In *Melin* v. *Richman* we said (p. 688): "A landowner cannot collect surface water in an artificial volume and turn it from its natural course in an increased volume upon his neighbor's land to his substantial injury"; and again, referring to an instruction given by the trial court in that case, we said (p. 690): "The purport of this instruction is, that when a landowner artificially collects water upon his own land, in order to avoid liability he must cause it to be so diffused that it will pass from his land upon that of his neighbor as it would originally have done if not so collected. This statement of law is not accurate in detail, because the diffusion required of artificially collected surface water need only be to such an extent as to prevent this water passing in an increased volume upon the neighbor's land to his substantial injury."

Speaking generally, our law may be summarized as follows: A landowner is under no duty to receive upon his land surface water from the adjacent properties, but in the use or improvement of it he may repel such water at his boundary. On the other hand, he incurs no liability by reason of the fact that surface water falling or running onto his land flows thence to the property of others in its natural manner. But he

may not use or improve his land in such a way as to increase the total volume of surface water which flows from it to adjacent property, or as to discharge it or any part of it upon such property in a manner different in volume or course from its natural flow, to the substantial damage of the owner of that property. The facts proven by the plaintiff under its second count bring this case within the last principle stated and there was no error in the decision for the plaintiff upon this count.

There is no error on either appeal.

In this opinion the other judges concurred.