## PATRICK J. COLEMAN
vs.
## CITY OF NEW HAVEN

Superior Court      New Haven County          File #47622

Present:   Hon. ALFRED C. BALDWIN, Judge.

John Elliott,                          Attorney for the Plaintiff.

The Corporation Counsel          Attorney for the Defendant.

MEMORANDUM FILED MARCH 16, 1936.

BALDWIN, J.   In June, 1930, plaintiff was the owner of a tract of land located in the towns of New Haven and Hamden which was bounded as follows:

Northerly, by land of the defendant, 150 feet and by land of George E. Hall, 250 feet, more or less;

Easterly, by land of the N. Y., N. H. & H. R. R. Co., 465 feet, more or less;

Southerly, by land now or formerly of Paul Goetz, 150 feet, more or less; thence,

Westerly, by land formerly of John Coleman, 256 feet, more or less; and thence,

Southerly, by land formerly of John Coleman, 150 feet, more or less; and thence,

Westerly, by Welton Street, 160 feet, more or less.

On June 21, 1930, plaintiff gave to the defendant a revocable permit to construct and maintain an overflow sewer from its Welton Street pumping station across or through his property to the westerly side of the railroad right of way. Thereafter defendant constructed a storm water sewer of vitrified brick, eighteen inches in diameter, from the easterly side of Welton Street, approximately sixty feet southerly of land on which its pumping station is located, running easterly across the land of plaintiff to a point approximately thirty feet westerly of the westerly line of the railroad property. This sewer is connected with the Welton Street sewer and discharges such surface water as it carries at its eastern terminus.

State Street runs northerly from the city leading to Hamden and North Haven and Lyman and Albert Streets lead easterly from State Street into Welton Street which runs parallel with State Street.   North of Bishop's Gate, which is located on the westerly side of State Street and approximately fifteen hundred feet southerly from plaintiff's land, the slope of the land is northerly and easterly.

Storm water sewers have been constructed in State Street, Lyman Street and Albert Street.   They have not been connected with the Welton Street sewer, but it is a fair inference that the City intends to so connect since they are constructed

to carry surface water in that direction. The curbs and gutters on these streets collect surface waters of these streets and a considerable of the area served by these streets including a considerable of the eastern slope of East Rock which is westerly of State Street which waters, by these streets, find their way to the Welton Street sewer and thence into the sewer that was constructed very nearly across plaintiff's land where they are discharged.

February 9, 1933 plaintiff gave the City notice of his revocation of the permission to construct and maintain the so-called "overflow sewer" in accordance with the terms of the permission, and the City thereupon proceeded to acquire, by condemnation proceedings, a strip of land twenty feet wide extending from the easterly line of Welton Street to the westerly line of the railroad property through which strip this overflow sewer leads from Welton Street to a point approximately thirty feet westerly from the westerly line of the railroad property, and thereby plaintiff's land was divided into two pieces.

Incident to the condemnation of this strip of land plaintiff was paid damages for the taking by the City of the twenty feet strip referred to in accordance with a judgment of this Court rendered under date of March 22, 1935.

Plaintiff's land slopes downward from Welton Street toward land of the railroad company and slightly toward the north. Much the larger part of his land was low and swampy. Along near the rear, parallel with the land of the railroad company, and approximately thirty feet therefrom, for some years a small ditch has been dug and maintained (sometimes referred to as a mosquito ditch) for the purpose of draining this low land. Into this ditch the waters from the overflow sewer discharge and formerly flowed north to a culvert under the railroad and thence into the Quinnipiac River.

For the past three or four years the City has been using plaintiff's land as a dump with his permission and by his request, and thereby his land is being brought up to a grade level or nearly level with Welton Street. This is to the mutual advantage of both parties. Plaintiff's low swampy land is being made high and dry land.

This section is zoned by the City of New Haven and the

Town of Hamden for industrial purposes.

In the grading of plaintiff's land the ditch referred to, both north and south of defendant's twenty feet strip and in close proximity thereto has been filled, and filling of the rest of the ditch will progress as the grading progresses. This grading and filling of the ditch plaintiff has the right to carry on to completion. It involves no natural water course.

From the melting snow and at times of heavy rains a considerable volume of water from the area referred to is collected by the City and brought to this overflow sewer that naturally would spread out over adjoining lands and would not be discharged, as it now is, at or near the easterly end of defendant's strip of land and thence flow onto and permeate the soil of plaintiff's land.

The land in question has been viewed by the Court with counsel; the ground around and near the outlet of this sewer has been filled in and raised leaving a hole at the outlet approximately five or six feet deep and eight or more feet in diameter.

The discharging of storm water from this sewer has not heretofore caused plaintiff any material damage; but his grading has now progressed to that point where material damage will result unless the City immediately devises some method by which the accumulating water at times of storm is provided for its discharge elsewhere.

Near the westerly end of the defendant's strip of land a manhole connects with this sewer. Evidence was offered that at times of heavy rain water sets back and flows out from under the cover and thence upon plaintiff's land. This condition I believe is caused by the filling in around the outlet causing a pool in the hole described and setting back of the water in the sewer because of the slight grade and may be overcome by plans which the City should provide for the discharge of the storm water elsewhere which, under the circumstances, may be done at reasonable expense.

The area of drainage onto plaintiff's land has been greatly increased by reason of the curbs and gutters upon the streets and the sewers therein which collect the surface water and cause its accumulation in this storm water sewer and thence its discharge in volume where it now has become a condition

that will cause immediate damage to the plaintiff which will increase unless remedial steps are not promptly taken.

See **Tidewater Oil Sales Corp. vs. Shinelman, 114 Conn. 182; Sisters of St. Joseph Corp. vs. Atlas Sand, G. & S. Co., 120 Conn., 168.**

Among the claims for relief plaintiff seeks a permanent injunction restraining the defendant City from discharging water from this sewer in such manner as will permit of its flooding upon his land. Plaintiff is entitled to this relief. The other prayers for relief are denied.

Judgment may be entered for the plaintiff for a permanent injunction in accordance herewith.