## ALEXANDER RUTKA
*vs.*
## GEORGE RZEGOCKI ET AL.

| Superior Court | New Haven County (at Meriden) | File No. 64789 |

### MEMORANDUM FILED JULY 24, 1944.

*Lewis J. Somers,* of Meriden, for the Plaintiff.

*Frederick S. Harris,* of Meriden, for the Defendant.

MUNGER, J. There was no reason for joining the husband of the defendant Anna Rzegocki in this action, and we may discuss the cause of action only as against the defendant wife, who may therefore be referred to as the only defendant.

The plaintiff and defendant are adjoining owners of land with buildings thereon, fronting on Cook Avenue in Meriden. Both of their houses are substantially above the level of the street. The defendant formerly owned and occupied the property of the plaintiff. She ceased to occupy the property on September 2, 1941, and shortly thereafter the plaintiff, who had acquired title, took possession and began to reside in the dwelling.

The plaintiff charges the defendant with the malicious erection of a structure on her property in violation of section 5907 of the General Statutes, Revision of 1930, and the complaint further charges the conversion of certain blinds and beams belonging to the plaintiff. Neither one of these causes of action has been proved by any preponderance of evidence and may be dismissed from further consideration.

The substantial complaint of the plaintiff is that the defendant has erected on her property a wall running along the boundary line and has raised the level of her land to the south of the wall so that land is above the top of the wall. It is further alleged that the defendant has deposited a quantity of soil along the boundary line running west from the end of the wall and another quantity of earth parallel to Cook Avenue on the southeast portion of her premises. The complaint then charges that the effect of these acts has been to change the natural flow of the surface water falling on the defendant's land, to cause it by artificial means to collect and concentrate so that it drains toward and upon the plaintiff's land in greater volume than if the acts of the defendant had not been performed.

The law of the case is clearly settled as appears in *Tide Water Oil Sales Corp. vs. Shimelman,* 114 Conn. 182. The opinion states (p. 187), quoting from *Dickinson vs. City of Worcester* (89 Mass. 19, 22):" 'A conterminous proprietor may change the situation or surface of his land by raising or filling it to a higher grade, by the construction of dykes, the erection of structures or by other improvements which cause water to accumulate from natural causes on adjacent land and prevent it from passing off over the surface'." The opinion further states (p. 189): "A landowner is under no duty to receive upon his land surface water from the adjacent properties, but in the use or improvement of it he may repel such water at his boundary. On the other hand, he incurs no liability by reason of the fact that surface water falling or running onto his land flows thence to the property of others in its natural manner. But he may not use or improve his land in such a way as to increase the total volume of surface water which flows from it to adjacent property, or as to discharge it or any part of it upon such property in a manner different in volume or course from its natural flow, to the substantial damage of the owner of that property."

We have to consider, therefore, whether the defendant has committed any wrongful acts which come within the formula and prohibition of the law in this case.

The corresponding levels of the plaintiff's land and defendant's land appear on map, Exhibit A. At the top of this map and on the west of the respective properties is shown a tract designated as the Gardner tract or property. The land slopes from this point down toward Cook Avenue and also to the east and north. A view of the premises clearly shows this slope, and one can clearly visualize the slope along the defendant's land as shown on the map, Exhibit A.

Beginning with the level of the Gardner property the land slopes from 164 and 158.4 at the top of the property to 100 on Cook Avenue. At a point at the steps to the property of the defendant the land has sloped down to a level of 110.5, and at the top of the steps of plaintiff's land the level is 114.8. The level at the top of the excavation on the plaintiff's property is 127.4 on the south and 126.6 on the north end. The level of the plaintiff's property at the foot of this excavation is 118.7 and on the north 119. There is therefore a drop of about nine feet between the level of the land at the top of the excavation and the bottom. The slope to the east upon the plaintiff's land is further shown on the map. The difference between the level at the west end of the excavation is 118.7 and 114.8 at the top of the plaintiff's steps which in effect is a slope to the east of the plaintiff's own property from the surface of their land at the foot of the excavation of four and one-half feet.

In so far as any evidence that the defendant, in putting any soil along her boundary line at the west end of the wall, is claimed to have collected and discharged surface water on the land of the plaintiff, which would not have come upon the property other than by such act, it is only necessary to say that the plaintiff has not in any way proved any such result has taken place. A very small quantity of soil, a few inches high, appears to have been deposited along the boundary line. Instead of causing more surface water to come upon the land of the plaintiff, the only possible result of this act would be to keep the surface water falling on the defendant's land away from the plaintiff's land. No evidence whatever has been given by the plaintiffs that during or after any rain or at any other time surface water has been discharged in large

quantities or otherwise upon plaintiff's land as a result of any soil placed along the boundary line as charged. The only proof of any such fact would be the observation of someone who had seen it or the obvious result of it and there is no such evidence. We may dismiss this allegation as a cause of action wholly unproved.

In like manner we may dismiss the deposit of dirt on the southern portion of the defendant's property referred to in the evidence as the "dam." No water is collected by this earth as an artificial means and cast upon the plaintiff's property. The opposite result has occurred and instead of water being caused by this dirt to drain upon the plaintiff's land it has taken the opposite direction and flowed away from plaintiff's land toward Cook Avenue. The defendant herself has personally observed this fact and I accept her statement without hesitation as true.

We may then discuss the real complaint of the plaintiff, the wall, about which the substantial portion of the evidence has centered. The wall as erected upon the property of the defendant is 35 feet long, 20 inches wide with a concrete cap. At a point 12 feet west of the end of the wall it is 7.7 feet higher than the plaintiff's land. At the east end of the wall it is 3.4 feet higher than the plaintiff's land. At the top of the wall the defendant's land is substantially at the same level. At the west end of the wall the surface water flows from east to north to the plaintiff's land. From this point to the east the water drains toward Cook Avenue.

Formerly along the boundary line between the proprietors there was an old stone wall 28 inches in height extending seven feet to the west along the line and at right angles for 15 feet. Just how long this wall had existed does not appear, but upon observation a small part remaining gives every appearance of age. This wall, which ran along the boundary line, was taken down when the new wall was built. The plaintiff now says that water flows over the top of this new wall upon his land; says indeed not that the water has come onto his land in greater volume because of the wall, but it has come upon his land from the land of the defendant by reason of such wall for the first time.

The plaintiff says also that water has come through this wall onto the land to his great damage.

The plaintiff's own witness Peck testified the wall was all right except there were two holes in which an arm might be thrust. The attention of the court upon inspecting the premises was called only to one hole. In the presence of counsel, without objection, the plaintiff Alexander Rutka inserted a two foot rule into this hole. It clicked against some obstruction after being put in the wall, which would seem to indicate the south section of the wall. At least it did not go through the entire portion of the wall and the only reasonable inference is that water would not come through the wall at this point. That leaves only one other hole in the wall that water could come through and this only by seeping or percolating down through the soil on the south side of the wall and thence through the wall. It is impossible to find that this quantity of water could be any greater in quantity than that which would drain off the land of the defendant toward the plaintiff's land in its natural course. Certainly the wall itself could not cause surface water to come upon plaintiff's land. Its only tendency would be to keep it away.

The essence of the complaint is that the defendant has raised the level of her land and back of the wall and the surface water comes over the top of it. The defendant denies that after the wall was built the level of her land was raised at all. At this point the controversy narrows. The issue must be found for the defendant. I am entirely satisfied that the defendant is telling the truth and that the plaintiff is not. It certainly appears from the testimony of Daggett, an entirely disinterested and competent civil engineer, that the present level of the defendant's land south of the wall is substantially the same as before the wall was built. Daggett made the blueprint, Exhibit B, in September, 1942. If the level of the defendant's land was substantially the same in September, 1942, as it is now, how could this level have been caused by raising the elevation of the land south of the wall as testified to by the plaintiff when the wall was not begun until August, 1943, and finished in December of that year? The witness Daggett not only says that the wall would not cause water to flow on plaintiff's land, but on the contrary, it would cause it to flow away from the land to the south and east. There can only be one possible result in accepting Daggett's testimony, and that is to completely discredit the testimony of the plaintiff and his wife, for they both testified that this land was raised to the top of the wall when the wall was built.

The testimony of the plaintiff must be further discredited since it appears from his statement that when the defendant built her house the soil was pushed about and against the wall. The house, however, was finished and the defendant moved into it in September, 1942, and the wall was not begun until August, 1943. This wholly discredits the plaintiff's testimony.

Plaintiff's evidence also is patently untrue when it is that no water ever came upon his property until the wall was built, since even upon his own testimony the defendant's land sloped down to the old stone wall. That statement cannot be accepted. Plaintiff says that no water has ever come upon his land over the top of the "excavation" so-called in the rear of his property. The differences in the level between the top of the excavation and the land in the rear of the dwelling house, which may be called the backyard, clearly shows that by natural law surface water must come from a higher to a lower level, and furthermore, the plaintiff says they had a drain which carried water from their land to Cook Avenue.

That water on occasion did come in volumes along the plaintiff's land toward Cook Avenue appears from the testimony of the dairy farmer, who upon occasion saw water moving to the east along the rear land. A former tenant of the plaintiff, Nessing, testified that there was always trouble with surface water and that after rains it would enter the cellar. The most convincing evidence is given by the defendant who occupied the property before the wall was built up to September, 1941. She says there was constant trouble with surface water draining upon the land and upon occasions it would go into the cellar. If her testimony is true, and I cannot find otherwise, then that would be additional reason for discrediting the testimony of the plaintiff.

The defendant upon direct examination clearly testified that when the wall was built she had put in no additional soil and had not raised its level. Upon cross-examination there appears to have been some confusion as there was also in the testimony of the daughter. I think what the defendant intended to say was that upon the building of the wall the adjacent soil was pushed against it. This does not at all imply the soil was raised. The cross-examination was a persistent attempt to

put words into the mouth of the witness. Afterward, upon inquiry by the court, the defendant emphatically repeated her testimony in chief that she did not raise the level of her land.

The court, with counsel, viewed the premises and the conclusions reached in the memorandum have been reached in part by such explanation of the evidence as has been afforded by the view. It cannot be found that the plaintiffs have suffered any damage by reason of any wrongful and unlawful act of the defendant. It has not been shown that she has committed any act within the provisions of the rule as laid down in *Shimelman* case cited herein, and judgment must be found for the defendant.

It seems to me that the real complaint of the plaintiffs is that water runs downhill. Some of the photographs are misleading. Exhibit F shows apparently the drainage of water across the surface of defendant's land to the north and east toward plaintiff's land. The house in the foreground of course is that of the defendant. Obviously it does not show any surface water being brought to and upon the land of the plaintiff as a result of the existence of the wall or any fill behind it. It is surface water seeking its natural level and running over land as stated by Daggett which was at substantially at the same level as the top of the wall before it was built.

Doubtless, after rains, there has been soil, together with water, which washed upon plaintiff's land. We cannot reverse natural laws by judicial fiat. The proprietors at the lower level must expect to be obliged to accept natural law. Even in these strange days of innovation, it cannot be expected that any court could require one to be reimbursed by his neighbor for damage to his property suffered merely from surface water seeking its natural level. Like all other waters, surface water, accumulating into a flow, forever seeks the sea.