[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION RE TEMPORARY INJUNCTION
Plaintiff brings this action in two counts for money damages and for a temporary and a permanent injunction.
The defendant, White Birch Farm Associates, has filed a special defense to the complaint claiming laches. CT Page 2164
An order to show cause issued on plaintiff's application for a temporary injunction and a hearing was held. Final briefs were received by the court on December 28, 1990.
Facts
The plaintiff is the owner of about 100 acres of land located on the westerly side of East street and in the rear thereof in Suffield.
The individual defendants (the homeowners) are the owners of six lots on Barn Door Hills Drive in said town, known as Lots 1, 2, 3, 4, 5 and 6 and certain open spaces all as shown on a map entitled "Final Subdivision Plan Barn Door Hills Prepared For White Birch Farm Associates, Suffield, Connecticut, Alford Associates Inc. Civil Engineers Windsor, Connecticut. Scale 1" = 40' Date February 14, 1989 with Revisions through 7/23/85" (the map).
Prior to February 14, 1989 the defendant partnership owned all the land shown on the subdivision map. It then subdivided the land, and obtained both zoning and Inland Wetland approval. It then sold lots to the individual subdivided the land, and obtained both zoning and Inland Wetland approval. It then sold lots to the individual defendants or their predecessors in title as finished lots. In addition, the homeowners received title to and are each one-sixth (1/6) owners of the open spaces. The partnership owns the streets.
All the land shown on the map is easterly of Mapleton Avenue and generally northerly and westerly of plaintiff's land.
In preparing the subdivision the partnership regraded the land, deposited some fill, and built a paved road. It also designed, laid out and installed a drainage system in that subdivision. That system constitutes, at least in part, a diversion of the surface waters.
As a result of the changes wrought on the subdivision land by the partnership, the water run-off increased about 16%. Some of that increased run-off was diverted by the subdivision drainage system to plaintiff's property. The area to which it is diverted is in a hard-pan road, some wetlands and some arable land. The court cannot find that the run-off increased in speed.
There is no proof which this court accepts that the homeowners either knew of the drainage problems when they CT Page 2165 bought these properties; that they have in any way contributed to the drainage problems or that they had or have any control over the drainage system.
The court finds that some of plaintiff's arable land has become less usable as a result of the increase in water run-off from the subdivision. The court cannot find how much of the arable land is unusable and to what extent. The court does find that the increased run-off is a continuing, though intermittent, irreparable injury. However, the court cannot find that plaintiff has proven her injury is substantial. There is no adequate remedy at law.
The suggested solutions to the problem would be expensive in relation to the injury. More importantly, those solutions would require excavation, installation of pipe, land clearing and obtaining easements. They also may require approval from various boards and commissions.
Law
The court's approach to the decision in this case is based on the "second branch of the rule of Tidewater Oil" [Sales Corporation v. Shimelman, 114 Conn. 182]. Ferri v. Pyramid Construction Co., 186 Conn. 682, 686.
The court has found irreparable injury. It has not found substantial injury. The court has found there is no adequate remedy at law. Berin v. Olson, 183 Conn. 337,341-343.
The court upon balancing all of the interests of the parties cannot issue the claimed injunction. Damages are, of course, left for another day.
N. O'Neill, J.