[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION RE: MOTION FOR SUMMARY JUDGMENT #125
The plaintiff, Healey Ford-Lincoln-Mercury, filed a three count complaint against the defendant, USI, Inc., on July 23, 1997. This action arises out of damages which the plaintiff allegedly sustained after the defendant developed and reconfigured its property, which is located adjacent to the plaintiff's property.
The plaintiff is the owner of property known as 165 Main Street, Branford, Connecticut (Healy property). The defendant is the owner of CT Page 9885 property known as 169 Main Street, Branford, Connecticut (USI property). The first count of the plaintiff's complaint alleges negligence. The plaintiff alleges that prior to 1989, the Healy property was dry and in excellent condition, and that there was no unreasonable runoff, dispersion, or water collection from USI's property onto the Healy property. The plaintiff alleges that in 1989, "the defendant developed, improved, graded and reconfigured the USI property." (Complaint, first count, ¶ 3.) The plaintiff alleges that the "development and improvement of the USI property has caused and continues to cause an excessive, unreasonable and unnatural runoff, dispersion and collection of water on to the Healy property . . . . [causing] severe and permanent damage to the Healy property and the buildings and improvements thereon, including but not limited to interference with the reasonable enjoyment of the Healy property . . . ." (Complaint, first count, ¶ 6.) The plaintiff alleges that he has had to expend, and will have to continue to expend, large sums of money for the replacement and repair of the damaged property, the value of the Healy property has been diminished, and the use and enjoyment of the Healy property has been lost.
The second count alleges nuisance in that the developments and improvements to the defendant's property diverted excessive water onto the plaintiff's property in a manner different in volume and course from its natural flow and resulted in an increase in the total volume of surface water onto the plaintiff's property which has existed for a considerable period of time.
The third count alleges trespass, in that the defendant altered the natural state of the water on the defendant's property and caused excessive water and silt deposits to enter onto and damage the plaintiff's property.
On September 29, 1997, the defendant filed its answer and on August 13, 1998, the defendant filed an amended answer and special defenses. On March 16, 2000, the defendant filed a second amended answer and special defenses. In the first special defense, directed at count one of the plaintiff's complaint, the defendant alleges that the plaintiff's negligence claim is barred by the applicable statutes of limitations set forth in General Statutes § 52-584. The second special defense, applicable to counts two and three of the plaintiff's complaint, alleges that the plaintiff's claims are barred by the applicable statute of limitations set forth in General Statutes § 52-577. The third special defense, directed at all counts of the plaintiff's complaint, alleges that the use of USI's property in 1989 was a "`reasonable use of land.'" (Second amended answer, third special defense.) The fourth special defense, directed at all counts of the plaintiff's complaint, alleges that the plaintiff experienced the same, or similar, water collection on CT Page 9886 the Healy property prior to 1989.
The defendant filed its motion for summary judgment, and a memorandum of law in support of its motion, on August 18, 2000. The plaintiff filed its objection to the defendant's motion for summary judgment on September 29, 2000. The defendant's reply brief was filed on April 24, 2001, and its supplemental reply brief was filed on September 14, 2001. The motion was argued before the court on May 21, 2001. In the course of oral argument, the court granted the plaintiff the opportunity to file supplemental affidavits clarifying what work was done on the defendant's property in 1995.[1]
Summary judgment "shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Practice Book § 17-49. "In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party . . . . The party seeking summary judgment has the burden of showing the absence of any genuine issues [of] material facts which, under applicable principles of substantive law, entitle him to a judgment as a matter of law . . . and the party opposing such a motion must provide an evidentiary foundation to demonstrate the existence of a genuine issue of material fact." (Citations omitted; internal quotation marks omitted.) Appleton v. Boardof Education, 254 Conn. 205, 209, 757 A.2d 1059 (2000).
"[S]ummary judgment is not well suited to the disposal of complex cases." Miller v. United Technologies Corp., 233 Conn. 732, 752,660 A.2d 810 (1995). "Issues of negligence are ordinarily not susceptible of summary adjudication but should be resolved by trial in the ordinary manner." (Internal quotation marks omitted.) Fogarty v. Rashaw,193 Conn. 442, 446, 476 A.2d 582 (1984).
I. Whether The Plaintiff's Negligence Claim Is Time Barred By GeneralStatutes § 52-584.
In its motion for summary judgment, the defendant argues that the first count of the plaintiff's complaint is time barred by § 52-584.[2]
The defendant claims that § 52-584 has two prongs, and that the first prong requires that the action be brought within two years of the date when the injury is first sustained or discovered. The defendant argues that the plaintiff admitted in a deposition that it witnessed, as early as 1989, work being done to the defendant's property, and that by late 1989 or 1990, it discovered that the back portion of the Healy property had begun to flood and that ponding had occurred. Accordingly, the defendant argues that in order to overcome the first prong of § 52-584, CT Page 9887 the plaintiff should have commenced the present lawsuit by 1992, and that the plaintiff did not commence its lawsuit until July 15, 1997, nearly seven years after the plaintiff's discovery of the alleged injury.
The defendant also argues that the second prong of § 52-584, the so-called "repose section," prohibits actions from being brought more than three years from the date of the act or omission complained of. According to the defendant, the limitations period begins to run on the date the tortious act or ommission occurs, which, in the present case, would have been work which the plaintiff alleges occurred in 1989. The defendant argues that the plaintiff had three years from the 1989 acts to assert a claim in negligence. The defendant argues that because the plaintiff did not commence suit against the defendant until 1997, the present action is time barred under the second prong of § 52-584.
The defendant asserts that the plaintiff may argue that the "continuous course of conduct" doctrine applies to toll the three year statute of limitations set forth in § 52-584. The defendant claims, however, that the plaintiff's use of this argument would be unavailing in the present matter because the doctrine focuses on "`specific tortious acts or omissions'"; (Defendant's memorandum, p. 6, quoting Blanchette v.Blanchette, 229 Conn. 256, 276, 640 A.2d 74 (1994)); and courts have interpreted the doctrine to bar causes of action where the acts of a party do not constitute a continuous course of conduct, but, rather, constitute a single tortious act with continuing ill effects. The defendant claims that the plaintiff alleges in its complaint that the "property suffered permanent flooding damage starting in 1989-90 and continued overtime." (Defendant's memorandum, p. 11, quoting Complaint, first count, ¶ 6.) According to the defendant, the alleged acts do not constitute a continuing course of conduct, but, rather, the work constitutes a single tortious act with continuing ill results; therefore, the plaintiff's anticipated reliance on the continuous course of conduct doctrine would not apply to the present case and the statute of limitations may not be tolled.
The plaintiff counters that the defendant is not entitled to judgment as a matter of law because genuine issues of material fact exist with respect to whether the action is time barred by the applicable statute of limitations. According to the plaintiff, the continuous course of conduct doctrine does function to toll the applicable statute of limitations so that its claim may be preserved. The plaintiff argues that there is no evidence before the court which establishes the exact date on which the defendant completed all the work on its property. The plaintiff asserts that contrary to the defendant's claims, the work done to the defendant's property was not completed until sometime in 1996. In addition, the plaintiff argues that the defendant has not provided the court with any CT Page 9888 documentation which establishes the date on which all the construction and improvements to its property were completed. The plaintiff also claims that the present case does not present one defined act or omission, as the defendant argues, but that it presents work done over a period of time, and because of a lack of certainty with respect to when the work ended, the statute of limitations cannot apply and issues of material fact exist with respect to whether the continuous course of conduct applies to the facts of the present situation.
"[T]o support a finding of a continuing course of conduct that may toll the statute of limitations there must be evidence of the breach of a duty that remained in existence after commission of the original wrong related thereto. That duty must not have terminated prior to commencement of the period allowed for bringing an action for such a wrong . . . . Where we have upheld a finding that a duty continued to exist after the cessation of the act or omission relied upon, there has been evidence of either a special relationship between the parties giving rise to such a continuing duty or some later wrongful conduct of a defendant related to the prioract." (Emphasis added; internal quotations marks omitted.) Witt v. St.Vincent's Medical Center, 252 Conn. 363, 369-70, 746 A.2d 753 (2000). See also Blanchette v. Barrett, 229 Conn. 256, 275, 640 A.2d 74 (1994). "[T]he application of the continuing course of conduct doctrine [is] conspicuously fact-bound." (Internal quotation marks omitted.) Sherwoodv. Danbury Hospital, 252 Conn. 193, 210, 746 A.2d 730 (2000).
In Connecticut, a duty exists with respect to a landowner's use of surface water. A delineation of this duty may be found in the second prong of the "common-enemy doctrine," which provides: "A landowner is under no duty to receive upon his land surface water from the adjacent properties, but in the use or improvement of it he may repel such water at his boundary. On the other hand, he incurs no liability by reason of the fact that surface water falling or running onto his land flows thence to the property of others in its natural manner. But he may not use orimprove his land in such a way as to increase the total volume of surfacewater which flows from it to adjacent property, or as to discharge it orany part of it upon such property in a manner different in volume orcourse from its natural flow, to the substantial damage of the owner ofthat property." (Emphasis added.) Tide Water Oil Sales Corp. v.Shimelman, 114 Conn. 182, 189-90, 158 A. 229 (1932)[3]
Affidavits submitted by the parties reflect disagreement over whether additional work was performed on the defendant's property in 1995 which would constitute "some later wrongful conduct of a defendant related to the prior act." Witt v. St. Vincent's Medical Center, supra, 252 Conn. 370. For example, in its first affidavit, the plaintiff avers that "[b]eginning in 1989 and continuing up to and including a portion of the CT Page 9889 year of 1996, USI periodically and continually dumped fill, construction materials and refuse on the USI property and graded, improved and reconfigured same, causing unreasonable water dispersion, pooling, flooding and run-off onto the adjacent and continuous Healey property." (Healy Affidavit, September 29, 2000, ¶ 7.) In its second affidavit, the plaintiff avers that "during the year 1995," he saw work crews continuing to "add and deposit materials, rocks and fill onto the USI property in order to fill in a remaining low area of standing and ponding water located adjacent to the Healey property . . . and that at this time and throughout 1995, he observed "the standing and ponding water disappear from the USI property, and . . . the water level and/or coverage on the Healy property increase." (Healey Affidavit, May 24, 2001, ¶¶ 4-7.) Alan Bietsch, the plaintiff's expert, basing his opinion, in part, on an aerial photograph which was taken in April, 1995, by the Connecticut department of environmental protection (DEP); (Plaintiff's Exhibit 3); avers that in 1995 the defendant's property appeared to be "under some construction activity, not fully graded, and without the processed stone which is now located thereon" and, assuming the facts stated in the plaintiff's May 24, 2001 affidavit to be true, such activity would cause water to have been displaced from the defendant's property and "forced onto" the plaintiff's property. (Bietsch Affidavit, May 30, 2001, ¶¶ 7-8.) Bietsch elaborates on his affidavit testimony in his certified deposition, where he states that, based on a DEP survey sketch done in 1995, "there are still stockpiles of material; there is heavy equipment . . . there is drainage pipe that is above ground and stockpiled. It looks like there is — the ongoing operation is ongoing . . . . It looks like construction is being done." (Plaintiff's Exhibit B, Bietsch Deposition, p. 17; see also pp. 25-27.)
The defendant's expert, Robert Criscuolo, who designed the water drainage system which was implemented on the defendant's property in 1989, avers that "[a]fter the construction of the water drainage system in 1989, the only known alteration to the property was the placement of crushed stone in 1995 to smooth out and top dress the middle area of the property . . . ." (Criscuolo Affidavit, April 6, 2001, ¶ 5.) Criscuolo also avers that "[t]he laying of crushed stone has not caused additional water run off from [the defendant's property] onto the plaintiff's adjacent property. . . ." (Criscuolo Affidavit, April 6, 2001, ¶ 6.)
Because (1) a landowner has a duty to avoid improving his land "in such a way as to increase the total volume of surface water which flows from it to adjacent property"; Tide Water Oil Sales Corp. v. Shimelman, supra, 114 Conn. 189-90; and (2) the parties have submitted conflicting affidavit testimony with respect to (a) whether, and to what extent, additional work was performed on the defendant's property in 1995; and CT Page 9890 (b) whether, or to what degree, such work affected the plaintiff's property, genuine issues of material fact exist with respect to whether the defendant engaged in a continuous course of conduct which tolled the statute of limitations set forth in § 52-584. Therefore, summary judgment as to the first count of the plaintiff's complaint must be denied.
II Whether The Plaintiff's Nuisance And Trespass Claims Are Time Barred ByGeneral Statutes § 52-577.
In moving for summary judgment, the defendant argues that the plaintiff's trespass and nuisance claims are time barred because they were not brought within the three year statute of limitations period set forth in General Statutes § 52-577.[4] The defendant also argue that pursuant to the statute, the date of the act or omission complained of is the date when the tortious conduct of the defendant occurs, not the date when the plaintiff first sustains damage. According to the defendant, the act or omission in the present case occurred in 1989, the year the plaintiff admitted in his affidavit that he first witnessed fill being deposited on the defendant's property and flooding on the back lot of his own property. The defendant also claims that the plaintiff stated in his deposition that the "ponding effect, caused by the defendant's fill, had not changed since 1992." (Defendant's Memorandum, p. 16, quoting Healey Deposition, pp. 100, 109.) Therefore, the defendant claims that because the plaintiff brought this action in 1997, his claims are barred by the statute of limitations set forth in § 52-577.
The plaintiff counters that the classification of whether a nuisance or trespass is temporary or permanent is a question of fact, and, because the defendant continuously filled and regraded his property in the years following 1989, genuine issues of material fact exist with respect to when the nuisance and trespass in the present case became permanent. Therefore, the plaintiff argues that the counts in nuisance and trespass cannot be time barred by the statute of limitations.
"`A private nuisance is a nontrespassory invasion of another's interest in the private use and enjoyment of land.' 4 Restatement (Second), Torts § 821D (1979) . . . . The law of private nuisance springs from the general principle that it is the duty of every person to make a reasonable use of his own property so as to occasion no unnecessary damage or annoyance to his neighbor . . . . `The essence of a private nuisance is an interference with the use and enjoyment of land.' W. Prosser W. Keeton, Torts (5th Ed. 1984) § 87, p. 619.'" (Citations omitted; internal quotation marks omitted.) Pestey v. Cushman,259 Conn. 345, 352, 788 A.2d 496 (2002). "The essentials of an action for trespass are: (1) ownership or possessory interest in the land by the CT Page 9891 plaintiff; (2) invasion, intrusion or entry by the defendant affecting the plaintiff's exclusive possessory interest; (3) done intentionally; and (4) causing direct injury." Abington Ltd.Partnership v. Talcott MountainScience Center, 43 Conn. Sup. 424, 427, 657 A.2d 732 (1994).
"Whether a nuisance is temporary or permanent is ordinarily a question of fact." Filisko v. Bridgeport Hydraulic Co., 176 Conn. 33, 40,404 A.2d 889 (1978). "Generally, `[a] statute which establishes a limitations period in an action for trespass to real property commences running at the occurrence of the first actual damages. The statute runs, in the case of a trespass or physical invasion of the surface of another's land, from the time of the unlawful entry.' 75 Am.Jur.2d, Trespass, § 200. However, `[w]here a trespass is a continuing one, and not of that class of permanent appropriations to be assessed for all time at once, there may be successive actions for each continuance of the trespass.' Id., § 114. `A continuing trespass upon real property creates separate causes of action, which are barred only by the running of the statute against the successive trespasses, and not by the running of the statute from the time of the original trespass.' Id., § 201."Prescott v. Northeast Utilities, Superior Court, judicial district of Fairfield at Bridgeport, Docket No. 315423 (December 18, 1995, Ballen,J.) (15 Conn.L.Rptr. 489, 490).
In Piccolo v. Connecticut Power and Light Co., Superior Court, judicial district of New Haven, Docket No. 371992 (November 5, 1996, McMahon,J.), the plaintiff filed a complaint against the defendant, alleging, in part, nuisance and trespass because the defendant operated power lines, which emitted an electromagnetic field, on an easement which crossed the plaintiff's property. The defendant moved for summary judgment as to the relevant counts of the plaintiff's complaint, claiming that the plaintiff's claims were barred by the statute of limitations provisions of § 52-577. The court denied summary judgement, concluding that the defendant failed to "demonstrate the nonexistence of a genuine issue of material fact. Specifically, the defendant [failed] to demonstrate that the act of trespass or nuisance, of which the plaintiff complain[ed], was a discrete act, as opposed to an ongoing act." Id.
In the present case, the parties submitted conflicting affidavit testimony with respect to the effect of the defendant's work on the plaintiff's property. For example, in its first affidavit, the plaintiff avers that "[t]he flooding, pooling dispersion and runoff of water on the Healy property, caused by the filing, grading, reconfiguring and improvement of the USI property, has increased through the years since 1989 to date, and has resulted in the creation of pooling, ponding and wetlands on the Healey property, the extent of which has been continually increasing over time to the present." (Healey Affidavit, September 29, CT Page 9892 2000, ¶ 8.) By contrast, Criscuolo avers that "[after] the construction of the storm water drainage system in 1989, the only known alteration to the property was the placement of crushed stone in 1995 . . . . The laying of crushed stone has not caused any additional water run off from [the defendant's property] onto the plaintiff's adjacent property . . . ." (Criscuolo Affidavit, April 6, 2001, ¶¶ 6-7.)
Accordingly, because genuine issues of material fact exist with respect to whether the alleged nuisance and trespass were "discreet" or "ongoing"; Piccolo v. Connecticut Power and Light Co., Superior Court, Docket No. 371992; the defendant's motion for summary judgment as to counts two and three of the plaintiff's complaint must also be denied.
 Conclusion
The defendant has not met its burden of demonstrating the absence of genuine issues of material fact, entitling it to judgment as a mater of law. Furthermore, this case presents complex issues of fact which are inappropriate for summary judgment. Therefore, defendant's motion for summary judgment as to all three counts of the plaintiff's complaint is hereby denied.
____________________ Thompson, J