# Hughes *v.* Anderson.

*Action to Recover Damages for Overflowing Lands.*

1. *Action on the case for overflowing lands; when exemplary damages may be recovered.*—In an action on the case for overflowing plaintiff's lands by digging ditches on the adjoining lands of the defendant, of higher elevation, and thereby turning the flow of water from its natural course, exemplary damages may be recovered, if malice or wantonness on the part of the defendant is shown.

VOL. LXVIII.

[Hughes v. Anderson.]

2. *Same; statute of limitation of one year; injuries sustained after commencement of suit not recoverable.*—The limitation of an action for damages for overflowing lands, is one year, and there can be no recovery for injuries sustained after the commencement of the suit; but in estimating the damages accruing within the twelve months, and in separating them from those suffered before that time, much latitude and discretion are allowed to juries.

3. *Sic utere tuo, ut alienum non lædas; qualification of the maxim.* While, as a rule, every one must so enjoy his own property as not to offend his neighbor's equal right to enjoy his own unmolested, this rule can not be enforced in its strict letter, without impeding rightful progress, and without hindering industrial enterprise; and hence, minor individual interest is sometimes made to yield to a greater and paramount good.

4. *Rights of proprietors of superior and inferior heritages as to flow of water.*—The proprietor of a superior heritage can not, by artificial means, cause water to flow on the inferior, which had before that time flowed in a different direction; nor can the owner of an inferior heritage, by dam or levee, obstruct the natural flow of water so as to cause it to recede, or stand on the superior.

5. *Same.*—The owner of lands has a right to drain them by artificial ditches, although thereby the water is precipitated more rapidly, and in greater volume on the lands of an adjacent proprietor below, provided he does not thereby cause water to flow on the lands of such adjacent proprietor, which, in the absence of the ditches, would have flowed in a different direction, and provided he acts with a prudent regard for the welfare of his neighbor. This, however, must be weighed and decided by the jury, under instructions from the court, with a proper reference to the value and necessity of the improvement to the superior heritage, contrasted with the injury done thereby to the inferior.

6. *Argumentative charge should be refused.*—Charges to juries should be made up of clear and distinct legal principles, without involvement, and should be free from redundant verbiage, or other confusing elements. Hence, a charge argumentative in its frame is not in proper form for instructions to a jury, and may be rightly refused on that account.

APPEAL from Jefferson Circuit Court.

Tried before Hon. WM. S. MUDD.

This was an action on the case, brought by Thomas A. Anderson and others against Matthew Hughes, to recover damages resulting from the overflow of their lands, caused by ditches cut and opened by the defendant on lands owned by him, and adjacent to the lands of the plaintiffs, and was commenced on 9th September, 1876. The defendant pleaded "not guilty, with leave to give in evidence any matter that might be specially pleaded"; and upon the issue thus formed the cause was tried. The evidence introduced on the trial tended to show that the ditches were cut and opened by the defendant in January, 1875. Evidence was also introduced tending to show, that the defendant, by cutting and opening the ditches, caused some water to flow off his lands on those of the plaintiffs, which, without such ditches, would have flowed in a different direction. There was also some evidence tending to show malice, or a wanton disregard of the plain-

tiffs' rights on the part of the defendant. The other facts disclosed by the evidence are sufficiently stated in the opinion. After the general charge, to which no exceptions were reserved, the defendant asked the court in writing to give to the jury the following charges: 1. "If the jury find a verdict in favor of the plaintiffs, such verdict can only be for such damages as were done to plaintiffs' land and property, and sustained or suffered by plaintiffs, within one year next before the commencement of this suit, to-wit: between the 9th September, 1875, and the 9th September, 1876." 2. "Although the jury may find from the testimony, that damage was done to plaintiffs' land and property, and sustained by them before the 9th September, 1875 ; yet they can not add such damage to that which they may find to have been done to plaintiffs' land and property, and sustained by them, between the 9th September, 1875, and the 9th September, 1876." 3. "Although the jury may find from the evidence, that a given or particular amount of damage was done to plaintiffs' land and property, and sustained by them through defendant's ditches, within the period beginning with the cutting and opening of such ditches in January, or the early part of the year 1875, or whatever time the evidence shows they were cut or opened,. and ending with the commencement of this suit, yet they can not find for the plaintiffs at all, unless they can come to a satisfactory conclusion from the evidence, as to what portion or proportion of such damage was so done or sustained during the particular period, beginning the 9th September, 1875, and ending the 9th September, 1876." (Charges numbered 4 and 5 were also asked by him, but they assert the same legal proposition as the third, and need not be set out.) 6. "In cases like the one now before the jury, the law allows the plaintiffs to bring successive suits for the damage done to them each year ; and if the plaintiffs recover in this suit, then they can immediately commence another suit, and recover damage done to their property, and sustained by them, for the twelve months next preceding the commencement of the new or second suit, and so on for year after year, as long as the law now in force remains unaltered ; and such being the case, the jury can at once see, that it would be unfair and oppressive to defendant to find a verdict for any larger amount than one year's value of the use and occupation of the land, or the damages sustained by plaintiffs during one year,—because, if plaintiffs could recover fifty or a hundred dollars in each suit, and would bring enough of them, then one, two, or three acres of land would prove a mine of wealth, rivaling, by far, any land within the State of Alabama." 7. " While our laws properly guard and protect

[Hughes 𝑣. Anderson.]

both plaintiffs and defendants in cases like the one before you, yet, in the interest of agriculture, or with the view of encouraging the reclamation and drainage of lands, and bringing them into cultivation, or for some other reasons satisfactory to the law-making power, defendant can dig ditches on his own land to drain the surface water therefrom into a stream, which is its natural outlet, at one time increasing, at another, decreasing the quantity of water, to the injury of the plaintiffs, and not lay himself liable to damages."

8. "In this action plaintiffs can not recover any vindictive damages ; they can only recover, if at all, the actual damage done to plaintiffs' land, and sustained by plaintiffs during the year, beginning the 9th September, 1875, and ending 9th September, 1876."

These charges the court refused to give, and the defendant separately excepted. The plaintiffs recovered a judgment, on verdict, from which this appeal was taken by the defendant; and he here assigns as error the refusal of the Circuit Court to give the charges asked by him.

PORTER & MARTIN, for appellant.

HEWITT & WALKER, contra.

(No briefs came to the hands of the reporter.)

STONE, J.—That exemplary damages, or smart money, can be recovered in such an action as this, is settled in this State.—S. & N. Railroad v. McLendon, 63 Ala. 266 ; Phil., Wil. & Balto. R. R. Co. v. Quigley, 21 How. (U. S.) 202.

The limitation of actions of this kind is one year, and there can be no recovery for injury sustained after the commencement of the suit.—Roundtree v. Brantley, 34 Ala. 544 ; Polly v. McCall, 37 Ala. 20.

The bill of exceptions states that it contains all the evidence, and nothing is said in it of any permanent or lasting injury to the freehold. No proof that the injury complained of caused any deposit on plaintiffs' land, or that the increased flow of the water caused any of the soil of the lands to be washed away. Hence, we are not able to perceive on what ground any question could have arisen on the subject of permanent injury. From all that appears before us, if the ditches on defendant's lands were filled up, and the earth restored to the condition it was in before the excavation, the injury the plaintiffs complain of would cease. Our rulings hereafter announced will rest on the absence of proof of permanent injury.

[Hughes v. Anderson.]

The surface of the earth is everywhere uneven, producing inequality of elevation. Water seeks its level, and flows naturally from a higher to a lower plane. These differences of elevation are sometimes characterized as superior and inferior heritages. The inferior heritage, or lower surface, is doomed by nature to bear a servitude to the superior in this, that it must receive the water that falls on, and flows from the latter. The inferior can not complain of this, for *aqua currit et debet currere, ut solebat.* The proprietor of the superior heritage can not, by artificial means, cause water to flow on the inferior, which had theretofore flowed in a different direction; neither can the owner of the inferior heritage, by dam or levee, obstruct the natural flow of the water, and cause it to flow back, or stand on the lands of the superior. *Sic utere tuo, ut alienum non lœdas,* is the maxim, the rule in such case.—See *Stein v. Burden,* 29 Ala. 127. So, as a rule, every one must so enjoy his own property, as not to offend his neighbor's equal right to enjoy his own unmolested. But this rule can not be enforced in its strict letter, without impeding rightful progress, and without hindering industrial enterprise. Hence, minor individual interest is sometimes made to yield to a larger and paramount good. To deny this principle would be to withhold from the world the inestimable benefits of discovery and progress in all the great enterprises of life. The rough outline of natural right, or natural liberty, must submit to the chisel of the mason, that it may enter symetrically into the social structure.

As we understand the facts of this case, the plaintiffs and the defendant were coterminous landholders, each engaged in agriculture; the former owning the inferior, and the latter the superior heritage. Through the lands of the plaintiffs, and near the dividing line, flowed a natural stream or branch, which was the natural outlet for a part, at least, of the water which fell on defendant's land. The water flowed naturally from the defendant's land upon the lands of plaintiffs, and across a portion of it into the running stream. It flowed slowly, not in a collected body, but scattered over the surface. In its natural state, part of this water was absorbed, and part evaporated before it reached the lands of plaintiffs. By means of ditches, defendant collected all this surface water into one channel, thereby draining his own lands, and causing the water to flow much more rapidly, and in one body, into the branch on plaintiff's land. This emptied the water off defendant's land much sooner, and, as a consequence, precipitated it much more rapidly, and in increased volume, on the lands of plaintiffs, thereby flooding a portion

of his lands and rendering them uncultivable. We have, then, the case where plaintiffs must submit to an inconvenience and injury, or defendant must forego a beneficial improvement. What is the rule? Much has been said and written on this subject, and there is a want of harmony in the decisions on this, as on many other questions which have come before the courts. Among the many discussions of this question, we approve and adopt as our own the language of WOODWARD, J., in *Kauffman v. Griesemer*, 26 Penn. St. 407. He said : "Almost the whole law of watercourses is founded on the maxim of the common law, *aqua currit et debet currere*. Because water is descendible by nature, the owner of a dominant or superior heritage has an easement in the servient or inferior tenement for the discharge of all waters which by nature rise in or flow or fall upon the superior.  ·   ·   ·   This easement is called a servitude in the Roman law, and consists in the subjection of the inferior heritage towards those whose lands are more elevated to receive the waters which flow from them naturally.  ·   ·   ·   This obligation applies only to waters which flow naturally, without any act of man. Those which come either from springs, or from rain falling directly on the heritage, or even by the effect of the natural disposition of the places, are the only ones to which this expression of the law can be applied. It is not, however, to be understood, that because the flow of water must not be caused by the act of man, that therefore the proprietor who transmits water to the inferior heritage, is not permitted to do anything on his own land—that he is condemned to abandon it to perpetual sterility, or never vary the course of cultivation, simply because such acts would produce some change in the manner of discharging the water. The law intends not this. It prohibits only the immission into the inferior heritage of the waters which would never have fallen there by the disposition of the places alone. It never would nor could refuse to the superior proprietor the right to aid and direct the natural flow. Hence, for the sake of agriculture—*agricolendi causa*—a man may drain his ground which is too moist, and discharging the water according to its natural channel, may cover up and conceal the drains through his lands—may use running streams to irrigate his fields, though he thereby diminishes, not unreasonably, the supply of his neighbor below—and may clear out impediments in the natural channel of his streams, though the flow of water upon his neighbor be thereby increased.  ·   ·   ·   It is not more agreeable to the laws of nature that water should descend, than it is that lands should be farmed and mined; but

[Hughes v. Anderson.]

in many cases they can not be, if an increased volume of water may not be discharged through natural channels and outlets. The principle, therefore, is to be maintained; but it should be prudently applied. . · · The plaintiffs had no right to insist upon his receiving waters which nature never appointed to flow there."—*Martin v. Riddle*, 26 Penn. St. 415; Ang. on Water Courses (7th ed.), sections 108a to 108s; *Waffle v. N. Y. Central R. R. Co.*, 53 N. Y. 11; *Williams v. Gale*, 3 H. & Johns. 234; *Prescott v. Williams*, 5 Metc. (Mass.) 429.

Under these rules, defendant had no right, by ditches or otherwise, to cause water to flow on the lands of plaintiffs, which, in the absence of such ditches, would have flowed in a different direction. As to the water theretofore accustomed to flow on the lands of the plaintiffs, defendant was not bound to remain inactive. He was permitted to so ditch his own lands as to drain them, provided he did so with a prudent regard to the welfare of his neighbor, and provided he did no more than concentrate the water, and cause it to flow more rapidly, and in greater volume on the inferior heritage. This, however, must be weighed and decided with a proper reference to the value and necessity of the improvement to the superior heritage, contrasted with the injury to the inferior; and even this license must be conceded with great caution and prudence. It is a question for the jury to determine, on the facts of each particular case, under proper instructions from the court.

Applying these principles to the charges asked by defendant and refused, the first charge was calculated to mislead, because its tendency was and is to deny to plaintiffs the right to recover exemplary damages. If malice, vexation, or wantonness on the part of defendant was shown, the jury would be authorized to go beyond the actual injury to the land. The second charge should have been given. The third charge was rightfuly refused, for two reasons. Its tendency was to require a too strict and severe rule for the separation of the damages accruing within the twelve months, from those suffered before that time. Much latitude and discretion are allowed to juries in such inquiries. And, in any event, on the hypothesis of this charge, the jury would be authorized to award nominal damages.—*Stein v. Burden*, 24 Ala. 130. The fourth and fifth charges assert the same legal proposition as the third, and were rightly refused. The sixth charge is an argument, and not in proper form for instructions to a jury. Charges to juries should be made up of clear and distinct legal principles, without involvement, and free from redundant verbiage, or other confusing elements.

The introductory part of the seventh charge is an argument, and it was rightly refused on that account. The principle of the charge is objectionable, in this, that it does not limit and qualify the right to precipitate the flow of water on the servient or inferior heritage, as declared above in this opinion. The eighth charge was rightly refused.

Reversed and remanded.