40 So.2d 863

**VINSON et al. v. TURNER.**

**7 Div. 942.**

Supreme Court of Alabama.

May 19, 1949.

Arthur Burns and Roy D. McCord, of Gadsden, for appellants.

Robt. H. King, Roberts & Cunningham, and Geo. C. Hawkins, of Gadsden, for appellee.

272

LIVINGSTON, Justice.

This is a suit in equity for a mandatory injunction to require respondent to clean out or open an old ditch across his land in order that surface water may be discharged upon complainants' land in the same place and in the same manner that it has been discharged for a long period of time, and for damages.

There was a decree for respondent on proof, and complainants appeal.

The testimony was taken before the register and submitted to the trial court on depositions of the witnesses so taken. The rule is that, on appeal, this Court reviews the evidence without any presumption in favor of the trial court's finding of facts. We have carefully studied the record in the light of the rule.

The respondent, Robert Turner, is the owner of approximately four acres of land lying along the side of a county road, running north and south, in Etowah County, Alabama. Complainants, Annie and Emma Vinson, own farm and pasture lands lying east of and adjacent to respondent's land. Their land is lower than that of respondent. From a point opposite respondent's land, the roadway slopes upwardly both to the north and to the south. Ditches along the roadside carry the surface waters from the north and from the south to this point where it is discharged into a ditch running eastwardly across respondent's property. A year or two before this suit was commenced, the county cleaned out the ditch beginning at the roadway for a distance of some forty yards, through respondent's four acres. In time and from natural causes, this ditch filled and the water was caused to flow to the south of the old ditch and near a well on the property of respondent. In order to protect his well, and to cultivate more of the four acre tract, respondent did not reopen the old ditch but instead created a drainway about forty or fifty yards south of the old ditch, which caused the surface waters to enter complainants' pasture at a new and different place than the old ditch. Complainants insist that the waters were thus caused to spread out over the pasture, damaging it, covering the grass with sand, gravel and other debris, and killing several trees.

The question is, what are the rights of adjoining land owners relative to the control and disposition of surface waters where the property of one owner is located at a higher level than that of the other? Much has been written on the subject, and the decisions of the several courts are not entirely harmonious.

As applicable to the facts in the instant case, we are of the opinion that the case of King Land & Improvement Co. v. Bowen, 7 Ala.App. 462, 61 So. 22, 26, is decisive. It was there said:

"At common law surface water was regarded as a common enemy, and every landed proprietor had the right, as a general proposition, to take any measures necessary for the protection of his own property against its ravages; and the damages resulting in such cases to adjoining owners were regarded as damnum absque injuria, affording no cause of action. Walker v. New Mexico [& S. P. R., Co.], 165 U.S. 593, 17 S.Ct. 421, 41 L.Ed. 837; Chadeayne v. Robinson, 55 Conn. 345, 11 A. 592, 3 Am. St.Rep. 55. This common-law rule yet obtains in many jurisdictions in this country. But not so in this state. 30 Am. & Eng.Ency.Law (2d Ed.) p. 330, et seq. Here our Supreme Court long ago adopted,

and has ever since continuously followed, the rule of the civil law. This rule is founded in general on a principle of natural right, as embodied in the maxim: 'Aqua currit et debet currere, ut solebat,' 'Water flows, and as it flows, so it ought to flow,' as modified and restrained, under the necessities of advancing civilization, by that other principle that 'the rough outline of natural right must submit to the chisel of the mason that it may enter symmetrically into the social structure.' Hughes v. Anderson, 68 Ala. 280, 44 Am.Rep. 147. Under this rule, while a person's land is subservient to the adjacent lands of a naturally higher altitude, so far as water is concerned, yet it is subservient only to the extent that nature made it subservient; that is, it is required to receive from such higher lands all and only such water as would naturally flow from them upon it by reason of its natural depression. Nininger v. Norwood, 72 Ala. 277, 47 Am.Rep. 412; Crabtree v. Baker, 75 Ala. [91], 92, 51 Am.Rep. 424; Farris v. Dudley, 78 Ala. 124, 56 Am.Rep. 24. The law, however, in the interest of progress and development, under some circumstances does permit the owner of the higher lands, to which the lower land is thus naturally subservient, to control and direct, for purposes of proper drainage, by ditches or other artificial means on his own land, the surface water that naturally flows thereon and from it to the lower land, provided he does not thereby cause more or other water to flow on such lower land than it would naturally receive otherwise, and provided, also, that in so doing, he acts always with a 'prudent regard for the welfare of his neighbor.' Under no circumstances is he permitted to increase, but under some circumstances he is permitted to distribute, differently from nature, the total quantity of the water flowing naturally from his own to the lower subservient land, by even 'concentrating it and causing it to flow more rapidly and in greater volume upon the lower land.' Hughes v. Anderson, 68 Ala. 280, 44 Am.Rep. 147.

"In the case cited, Judge Stone, speaking for the court, said: 'Defendant had no right, by ditches or otherwise, to cause water to flow on the lands of plaintiff, which, in the absence of such ditches, would have flowed in a different direction. As to the water theretofore accustomed to flow on the lands of the plaintiff, defendant was not bound to remain inactive. He was permitted to so ditch his own lands as to drain them, provided he did so with a prudent regard for the welfare of his neighbors, and provided he did no more than concentrate the water, and cause it to flow more rapidly, and in greater volume on the inferior heritage. This, however, must be weighed and decided with a proper reference to the value and necessity of the improvement to the superior heritage, contrasted with the injury to the inferior, and even this license must be conceded with great caution and prudence. It is a question for the jury to determine in each particular case, under proper instructions from the court.' The brilliant and learned author appreciates that he is asserting a dangerous doctrine, yet one that is essential to promote progress and development. He seeks to prevent 'its abuse by throwing around it every possible safeguard, and leaves its application to each case to be determined by whether or not such conditions and circumstances are shown as will justify it under the principles he declares. He justified the application, and we think properly so, in the particular case he had under consideration, doing so in the interest of agricultural development, and on account of the impelling conditions to that end there shown by the evidence to exist, and the great benefit to the upper and the little detriment sustained to the lower estate thereby. In no other case, however, in this state have we been able to find another announcement or application of the particular doctrine; but the tendency of the other cases, while not dealing with it and not expressly repudiating it, is, at least, to limit and narrow, rather than to enlarge, the right there first conceded in the law of this state. Crabtree v. Baker, 75 Ala. 91, 92, 51 Am.Rep. 424; Nininger v. Norwood, 72 Ala. 277, 47 Am. Rep. 412; Savannah, Am. & M. Ry. Co. v. Buford, 106 Ala. [303], 312, 17 So. 395; Drake, Ex., etc., v. Lady Ensley Coal, Iron [& Ry.] Co., 102 Ala. [501], 506, 14 So. 749, 24 L.R.A. 64, 48 Am.St.Rep. 77; Farris v. Dudley, 78 Ala. 124, 56 Am.Rep. 24; Central of Ga. Ry. Co. v. Windham, 126

Ala. 552; 28 So. 392; [City]. Council v. Maddox, 89 Ala. 181, 7 So. 433; [Union Springs], Mayor, etc. v. Jones, 58 Ala. 654; [Troy,] Mayor, etc. v. Coleman, 58 Ala. 570; Hall v. Rising, 141 Ala. [431], 433, 37 So. 586; Alabama Western R. Co. v. Wilson, 1 Ala.App. 306, 55 So. 932; Southern Ry. Co. v. Lewis, 165 Ala. 555, 51 So. 746, 138 Am.St.Rep. 77; Central of Ga. Ry. Co. v. Keyton, 148 Ala. 675, 41 So. 918; Sloss-Sheffield Steel & Iron Co. v. Mitchell, 167 Ala. 226, 52 So. 69; Alabama Consol. Coal & Iron Co. v. Vines, 151 Ala. 398, 44 So. 377.

"From all the cases in this state just cited on the subject, when considered together, we judge the rule to be that the upper landowner has the right to ditch and drain his own land as he pleases, provided he does not thereby increase the burden on the lower estate or otherwise injure it. All of them hold that under no circumstances is he permitted to increase that burden to the extent of causing, by such artificial means, more water to flow on such lower land than it would otherwise naturally 'eceive; but Hughes v. Anderson, supra, holds that under some exceptional circumstances he is permitted to increase the burden at a particular point by concentrating into one channel and depositing, at that point, in greater volume and with greater rapidity and more injury than nature, water which had theretofore naturally flowed by divers natural channels over a wider area on the same lower estate.

"This exceptional right or 'license' in the upper proprietor to thus increase the burden on the lower estate, in this particular, must in all cases be exercised, as said, 'with a prudent regard for the welfare of his neighbor,' and itself arises only under exceptional circumstances and conditions; and as to whether they in fact exist and as to whether, if they do exist, they are sufficient to warrant the exercise of the right or 'license,' is to be determined by the jury, in each case, under proper instructions from the court, wherein they would be charged with the duty of determining whether the particular drain or ditch, which caused the damage, was necessary to the improvement of the upper land, whether one elsewhere or in some other method would not have reasonably accomplished the same benefit to the upper estate and resulted in no, or less, damage to the lower, and whether the value of the improvement to the upper land, as a result, so outweighed the detriment to the lower in particular and general good as to authorize it, and whether the upper owner in digging and locating and directing, on his own land, the drain (first, so shown to be necessary) acted with proper care and regard for the rights of the lower owner, such care and regard as would prevent, if he could do so reasonably and consistently with the purposes in view, and if he could not, as would minimize, as far as he reasonably could consistent with such purposes, the damage and injury to the lower estate. All of such matters, if we properly understand the decision in Hughes v. Anderson, supra, when the facts are in dispute, as in this case, should be submitted to the jury that they may determine in the first instance whether or not the circumstances and conditions upon which defendant predicates his right or license to act really exist; and, if they find that these circumstances and conditions, as claimed by defendant, do in fact exist, then they must determine, in the second instance, whether they are such as are sufficient to give rise to the right or license claimed weighing, as the jury must, the considerations suggested in Hughes v. Anderson; and if they find that they are sufficient, then they must determine, in the third instance, whether in the exercise of such right or license the defendant acted with a prudent regard for the welfare of plaintiff and caused no more damage or injury than was reasonably necessary to the end in view." See, also, Walshe v. Dwight Mfg. Co., 178 Ala. 310, 59 So. 630; City of Mobile v. Lartigue, 23 Ala.App. 479, 127 So. 257.

■ Under the foregoing principles, the evidence in this cause presented a factual question for the trial court, which he decided for respondent. We have examined the evidence without indulging the presumption that the trial court ruled correctly, but our conclusion is that the ruling was without error, and the cause is due to be and is affirmed.

Affirmed.

BROWN, SIMPSON, and STAKELY, JJ., concur.