65 So.2d 510

### KAY–NOOJIN DEVELOPMENT CO. v. KINZER.

### 8 Div. 642.

Supreme Court of Alabama.
March 13, 1953.

Rehearing Denied May 28, 1953.

Taylor, Bell & Morring and Patrick W. Richardson, all of Huntsville, for appellant.

Walter F. Eigenbrod, Huntsville, for appellee.

52

SIMPSON, Justice.

This is an appeal by Kay-Noojin Development Company from a final decree in a suit in equity against it by Marvin D. Kinzer. The original bill sought to enjoin the maintenance of a nuisance consisting of the collection of surface water by respondent upon its land as an upper proprietor in the City of Huntsville and casting it in unnatural volume upon the property of complainant, a lower proprietor. It also sought the recovery of damages.

Complainant's property consists of his dwelling and lot, the defendant's property being a residential development known as English Terrace. This development involved the laying out and grading of streets and ways and the opening up or digging of ditches and establishing drains. It is alleged that these ditches or drains interfered with the natural flow of surface waters falling upon defendant's lands, causing them to be collected and deposited through drains and culverts in unnatural quantity onto complainant's property and as a consequence complainant's residence was seriously damaged.

There was, originally, a demurrer to the bill on the sole ground that the bill was without equity. This demurrer was overruled and respondent appealed to this court. We affirmed that decree, 253 Ala. 583, 45 So.2d 795, on authority of the companion case of Kay-Noojin Development Co. v. Hackett, 253 Ala. 588, 45 So.2d 792, in which latter case the applicable principles of law were considered and discussed.

■ After affirmance, respondent undertook to interpose additional grounds of demurrer to the bill, praying leave of the court to do so. The complainant moved to strike these additional grounds and this motion was sustained. This action is assigned as error. Equity Rule 14, Code, Vol. 2, p. 1052, Appendix, provides that "without leave of Court, an additional demurrer may not be filed, nor may a demurrer be amended, after a demurrer to the same pleading has been submitted and ruled upon." A demurrer to the additional pleading having been submitted and ruled upon and that ruling having been appealed to and affirmed by this court, it was well within the discretion of the trial court to apply the stated rule and deny permission to file the additional demurrer.

■ Thereafter respondent answered and propounded interrogatories to the complainant. It appears that these interrogatories were served upon complainant October 4, 1951. The cause was set for hearing on evidence to be taken orally before the court on November 12, 1951. On that date counsel for respondent moved for a dismissal of the cause under Equity Rule 39, Vol. 2, p. 1084, Appendix, on the ground that said interrogatories had not been answered. Complainant's counsel thereupon expressed readiness to file answers at that time. Testimony of counsel for each side was heard on the question of a purported agreement between them as to the filing of answers to interrogatories, counsel for complainant testifying that he had some sort of agreement with one of defendant's counsel that the interrogatories might be answered at any time before the hearing. The trial court denied the motion to dismiss and allowed the answers to be then filed. Rule 39 requires such interrogatories to be answered within thirty days after service, unless otherwise ordered by the court, under penalty of dismissal unless the time for answer be extended. In this instance the court, in allowing the answers to be filed on the hearing, offered to respondent any additional time desired, in consequence of the answers not having been filed until the date of the hearing, to take additional testimony to rebut any part of the answers. The purported agreement of counsel aside, no error is made to appear. Matters of this sort necessarily are addressed to the sound discretion of the trial court and we observe no reason to interfere

with its exercise in this instance. No showing is made of any resulting prejudice or hardship to the defendant.

Subsequently defendant moved to require more complete answers to some of the interrogatories, which motion was granted in one instance and denied in others. These rulings were so clearly free from error as to require no detailed treatment here.

Evidence offered by complainant tended to sustain the allegations of the bill, that is, that in the process of its development respondent so constructed its system of sewers, ditches, culverts and drains as to cause surface water to be cast upon the complainant's property below in unnatural quantity. The evidence tended to show that the defendant's tract was built up with dirt from cutting away and carving out the streets and was caused to be made considerably higher; that before the development there had been no high water, but thereafter complainant's property was flooded. Walls of the house were cracked, windows came out from the sills and were required to be "stuffed," the walls had to be felted and papered, part of the foundation was caused to sink, the ground would stay soggy for several days, and from October until summer the house was damp, the family being required to move out of it some five times; the ceilings cracked and serious damage was caused to a floor furnace; floors, sills, joists and framing were caused to buckle or separate and parts of the timbers rotted.

On the part of the defendant, there is evidence tending to show a proper construction of the drainage system in accordance with the plans and requirements of the city engineer; that its development did not cause the alleged damage to complainant's property, but rather that it was subject to be overflowed prior to the defendant's development; that during the time complainant claimed to have suffered his damages there was an exceptional rainfall in that area, which was the immediate cause of the trouble. There was also evidence tending to show that complainant's damage was greatly less than that claimed.

After careful consideration of the whole evidence, we are persuaded that the conflicting contentions presented questions of fact which could only be correctly resolved by the trial court, who had the superior advantage of seeing and hearing the witnesses testify, in addition to an acquaintance with the properties involved. We discover no basis for a reversal of the decree expressing the judgment on the facts.

Complainant's witness, Mrs. Lackey, testified that she lived next door to complainant and had lived there since 1945. Over defendant's objection, she was permitted to make some response to a question as to whether her property was flooded between 1945 and the time defendant started its development in 1948. It is doubtful that the particular question was answered, the facts being developed on subsequent questioning that neither her own nor complainant's property was flooded during that period. Even so, evidence that the properties had not been flooded prior to operations of defendant was relevant to the issue of whether or not the overflowing of the complainant's property was the result of defendant's actions as tending to show susceptibility to overflow at a time three years previous. Whether this evidence was too remote rested within the sound judicial discretion to determine, and the ruling not being clearly erroneous will not be revised here. Springer v. Sullivan, 218 Ala. 645, 119 So. 851.

Some of the assignments are based upon the allowance of what appellant terms leading questions. Such matters were also within the discretion of the trial court. Ingalls v. Holleman, 244 Ala. 188, 12 So.2d 751. In no instance complained of was the court guilty of an abuse.

Error is alleged also in the refusal of the trial court to strike the answer of complainant's wife, his witness, when she testified that "the water was standing on the property and made the foundation sink —naturally the whole house buckled" etc. We cannot agree with appellant's contention that such testimony was exclusively a matter of expert opinion. It could be regarded, and evidently the trial court so considered it, as a shorthand rendering of a fact open to ordinary observation and ex-

perience as to just what damage was done to the house.

■ Complainant's witness Van Valkenburgh testified too as to the damage to complainant's residence and the probable cost of repair. Whether or not the witness was properly qualified was a question resting within the discretion of the court and the ruling will not be revised on appeal except in case of palpable abuse. We do not think any error resulted here. The witness was shown to be an architect with sufficient experience in the matters involved to render him prima facie competent to testify. Kirby v. Brooks, 215 Ala. 507, 111 So. 235; Ala.Digest, Evidence, ⊙546.

■ Respondent sought to introduce in evidence a series of daily reports on weather conditions in the area purported to have been made by "TVA" to the Huntsville Electric System covering a period of six months in the year 1947. The witness, an employee of the System, testified that they were received and filed by her in the course of her work. She knew nothing, however, of their authenticity nor by whom they were made. They were obviously not daily reports made in the course of the business of the electric company, by whom she was employed, and therefore without the purview of Code 1940, Title 7, § 415. Moreover, it is not clear what bearing the weather conditions might have had upon the issue without showing the resulting effect upon the complainant's property.

■ Defendant's witness Jones, shown to be a qualified civil engineer, was asked whether or not in his opinion as an engineer "the developer of English Terrace [defendant's property] did everything reasonable and practicable to control the drainage in that area." Appellant complains of prejudicial error in sustaining complainant's objection to this question. The contention cannot be sustained. The test is not as hypothesized by the question presented and it was within the discretion of the trial court to rule it objectionable. J. H. Burton & Sons v. May, 212 Ala. 435(7), 103 So. 46. The test is not alone the manner in which the drains and water channels were constructed, but whether or not by reason of

that construction the surface water was changed from its natural flow and caused to be deposited on the complainant's property to his damage. Kay-Noojin Development Co. v. Hackett, supra. But aside from the technical aspects of the question, the witness later was permitted to testify in detail just what steps the defendant did take in the matter of drainage, what was or was not practical, that the defendant's development had no effect on the surface drainage, and that any other system would have been impractical, thus resulting that the defendant had the benefit of a fair response to the inquiry anyway.

Finally, it is insisted that the conclusion that the appellant is liable at all is erroneous, the contention being that it was guilty of no negligence in the manner of construction of the drains or channels which collected the surface water and deposited it upon complainant's property. This, of course, would have been a question of fact for decision of the trial court, which under the evidence could have reasonably been resolved against the defendant. But, as stated, this is not the test. In Tennessee Coal, Iron & R. Co. v. Perolio, 206 Ala. 403, 405, 90 So. 876, 877, the court pointed out that the basis for liability in such cases is the wrong committed in casting surface water in unnatural quantities on the servient property, to its damage, by reason of the improvement of the superior estate. It was there stated, in speaking of Southern K. Co. v. Lewis, 165 Ala. 555, 51 So. 746, 138 Am.St.Rep. 77:

"* * * The railway company had, according to the complaint, so changed its property as to precipitate on Lewis' [plaintiff's] property water that otherwise would not have flowed on Lewis' property. This act was a positive wrong, regardless of whether the land was urban property or not, and for the damnifying consequences of this act the company was properly held liable. * * * "

The exceptional circumstances spoken of in some of our early cases and referred to in Lewis' case and in our recent case of Vinson v. Turner, 252 Ala. 271, 40 So.2d 863, which seem to qualify the above stated

rule, were shown in Tennessee Coal, Iron & R. Co. v. Perolio, supra, not to exist in cases as the instant one where the upper proprietor so graded or drained his land as to divert the natural flow of surface water from its natural channels and deposit it in greater volume on the lower proprietor to his material damage.

We have recanvassed the decisions on the question and regard the rule as enunciated in Kay-Noojin Development Co. v. Hackett, supra [253 Ala. 588, 45 So.2d 793], to be correct and here pertinent. It is thus epitomized in the fourth headnote:

"An upper proprietor who collects surface water into a channel and casts it upon property of a lower proprietor to his damage, when if it were not so collected the water would be scattered and diffused, is liable for the damage though the property is located within an incorporated town or city."

On a painstaking study of the record in the light of the argument of counsel, we have concluded that no prejudicial error is made to appear. It was clearly a question of fact as to whether or not the defendant was liable within the rule enunciated and the amount of his damage. The conclusion reached by the trial court was clearly not against the great weight of the evidence and we feel that we would be unwarranted in overturning it.

Affirmed.

LIVINGSTON, C. J., and BROWN and MERRILL, JJ., concur.

### On Rehearing.

On appellant's application for rehearing in this case, it is asserted that the decree below is erroneous because of the inclusion therein of damages resulting to appellee's property as the result of the creating and maintaining of the alleged nuisance, occurring *after* the filing of the original bill. The cases of Harris v. Town of Tarrant City, 221 Ala. 558, 130 So. 83; Goodyear Tire & Rubber Co. v. Gadsden Sand & Gravel Co., 248 Ala. 273, 27 So.2d 578, and others, are cited to the proposition that recoverable damages arising from creation and maintenance of an abatable nuisance are limited to injuries suffered up to the filing of the suit, each occurrence or recurrence of harmful consequences constituting a separate cause of action. As to this specification of error, it is said that we made no response in our opinion on original deliverance.

True, we did not specifically treat the question, being impressed then, as we are now, that the insistence was without merit. In deference to counsel's earnest argument in brief on rehearing, we will proceed to set forth our reasons for the stated conclusion.

The decree is in pertinent part as follows:

"* * * Upon consideration thereof the Court is of the opinion that the complainant is entitled to the relief prayed for in his bill of complaint insofar as he prays for damages suffered by him as a proximate consequence of the acts of the respondent, but is not entitled to an injunction, since by reason of facts occurring after the bill was filed the right to such injunction does not now exist. The Court is further of the opinion that the complainant has suffered damages in the sum of One Thousand ($1,000.00) Dollars as a proximate consequence of the *creating and maintaining* of the nuisance alleged in the bill of complaint prior to the time that said nuisance was remedied *after the filing of the original bill herein.*" (Italics supplied.)

The brief, in setting out a part of the decree, underscores the language italicized by us above. Apparently, we are asked to lift the two groups of words out of their context and, by placing them in juxtaposition, give to the decree the construction contended for. This, of course, would be an unwarranted grammatical contortion. Construed in its entirety, we think the effect of the decree is to grant the complainant "the relief *prayed for in his bill of complaint* insofar as he prays for damages," fixing the amount thereof, "as a proximate

56

consequence of the creating and maintaining of the nuisance *alleged in the bill*" (italics supplied). The injunction was denied by reason of matters occurring *after the bill was filed.*

Moreover, the testimony discloses that, while there were subsequent overflows of the complainant's property, complainant confined his claim for damages to the occurrences alleged in the bill and the court could have been under no misapprehension as to this. Many instances might be pointed out, but we think the following will suffice. On cross-examination of complainant, as a witness, he was asked a question relating to a ditch then existing near his property. Complainant's counsel interposed: "We object to that. We are not talking about today. We are talking about in December and in October, 1948. That is the time of the damages complained of." (The bill was filed January 13, 1949.) In reply, counsel for defendant stated in effect that the matter sought by his questions was pertinent to the phase of the bill seeking an injunction. Those items of evidence relating to overflows occurring after the filing of the bill were chiefly elicited by defendant, with apparent aim of showing its freedom from negligence and lack of liability in any event. The most specific estimate of complainant's damage was made by his witness Van Valkenburgh, based upon an examination of complainant's premises shortly after the bill was filed. The witness detailed the damages to complainant's house and the cost of repairs caused by the occurrence alleged in the bill. His estimate was placed at $1,000. But he stated that, in addition to the house damage, complainant's floor furnace had been damaged to the extent of $200. But, as we have said, there was evidence of subsequent flooding of the property. It was disclosed that the floor furnace was repeatedly damaged by the successive overflows. It is significant that in framing the decree the trial court made an award in the exact amount of the estimated cost of restoring complainant's house, eliminating any allowance as for the furnace.

We are not convinced that appellant's contention for error in the decree is sustainable. The application for rehearing is overruled.

Opinion extended and application for rehearing overruled.

LIVINGSTON, C. J., and STAKELY and MERRILL, JJ., concur.