BRADLEY, Judge.
The parties to this appeal are coterminous landowners. Irene P. Adams sued 0. D. King in the Circuit Court of Montgomery County for draining across her land two ponds located on his property, causing her property to flood. She alleged that as a consequence of his action she lost an opportunity to sell the property. After trial a jury returned a verdict in favor of Mrs. Adams, awarding her no compensatory damages but $500.00 punitive damages and ordering Mr. King to reseal the two ponds within eight months’ time. Mr. King appeals.
The only question properly presented for decision is whether in an area outside a municipality an upper landowner owes a duty to a lower landowner to prevent surface water from flowing upon the lands of the latter.
The two properties in question are part of a natural watershed. The Adams property *613 is the lowest in the area and thus serves as a catchment for surface water from surrounding lands. Mrs. Adams has owned the parcel of land which is the subject of the suit for about eight years; Mr. King has owned his for about four years.
When King purchased his property it contained two ponds which had existed over forty years. These ponds were not fed by a stream or well, but were constructed with dams so as to catch surface water falling onto the land or draining from other properties elevated above his. As a result of the two ponds and encircling dams, surface water which otherwise would have drained onto and across the Adams property was prevented from reaching the Adams property. A natural drainage ditch exists across the Adams property through which any water which reaches that parcel flows.
In August 1975 King decided to drain the ponds. The dams containing the two bodies of water were broken and the Adams land was flooded due to the heavy drainage for perhaps ten to twelve hours. Mr. and Mrs. Adams testified that their land has remained wet ever since the ponds were drained. A civil engineer who testified as an expert witness estimated the land would have remained wet from the drainage of the ponds for approximately ten days. However, since the dams and ponds are no longer collecting surface water from higher ground, that water now follows the natural contours of the watershed and drains into the ditch running across the Adams property, the same way water flowed before the ponds and dams were built. Any dampness along the ditch is due to natural drainage of the area and not to drainage from the two ponds, which are now dry except during periods of rain.
Mrs. Adams said that she had contracted with another person to sell her parcel of land for $10,000. When the property flooded, the contract of sale was cancelled by the prospective purchaser. Both Mr. and Mrs. Adams stated that the property is worth less now than it was before the ponds were drained, but neither could say how much less. The expert witness testified that the drainage of the ponds had not affected the value of the property in any way.
The two ponds were used primarily for fishing. Mr. King said the ponds had become so overgrown with weeds that fishing was impossible; he drained the ponds in order to clear the weeds and improve his property. Evidence adduced on behalf of the Adamses indicated that King drained the ponds in order to prevent Mrs. Adams from selling her property.
After Mrs. Adams had presented her case Mr. King moved for a directed verdict. This motion was denied. He now says that the trial court erred in denying his motion as to the equitable relief sought by Mrs. Adams. King’s position is that since an upper landowner owes no duty to a lower landowner to maintain impediments which inhibit the natural flow of surface water to the benefit of the lower landowner, the trial court erred by requiring him to repair the dams to his ponds.
Our research discloses that the precise question raised by King has never been litigated in this state. The decision most directly on point is Powell v. Edwards, 237 Ala. 572, 187 So. 716 (1939). There a railroad embankment had for more than thirty years diverted the drainage of surface water flowing naturally down the slope of the terrain into a stream. When an increased flow of water began to wash away the embankment, the railroad cut two culverts through the embankment to lessen and disperse the flow of water. The plaintiff claimed his land was injured by the consequent flooding and deposits of soil and debris which washed down from the higher lands. The defendant responded by denying the plaintiff had a cause of action, since the culverts merely restored the natural flow of surface water which the railroad embankment had intercepted. The defendant’s request for the affirmative charge was denied by the trial court. Relying on a single Iowa decision, the supreme court said:
“The mere fact that a lower proprietor has had the benefit of gratuitous improvements diverting the natural flow of *614 waters away from his lands certainly confers on him no legal right to have such status quo maintained for his benefit. Brainard v. Chicago, R. I. & P. R. Co., 151 Iowa 466, 131 N.W. 649; 67 C.J. 875.” 237 Ala. at 573, 187 So. at 717.
The trial court properly refused to give the affirmative charge, however, since it was possible that the installation of the culverts caused much greater damage than would have been the case had the natural flow of water not been interrupted. It. was for the jury to determine what injury had been suffered by the plaintiff as a result of the railroad’s action in cutting the culverts.
We conclude from this decision that although an upper landowner has no duty to protect a lower landowner from the flow of surface water, an upper landowner nonetheless may be responsible for damage sustained by the property of a lower landowner as a result of a change in the status quo. Although the court in Powell v. Edwards did not state a reason for its conclusion, that decision is clearly in line with the modified civil rule which the- supreme court had adopted with regard to the flow of surface water in rural areas. See City of Mountain Brook v. Beatty, 292 Ala. 398, 404, 295 So.2d 388, 392 (1974). Therefore, we think Powell v. Edwards is controlling in the case at bar.
The civil rule with regard to the flow of surface water is based on the fact of nature that water seeks a lower level; thus, lower land is legally subservient to higher land to receive surface water which naturally flows from the higher to the lower. By contrast, under the common-law rule, surface water is regarded as a “common enemy” and a landowner may restrict or control such water in any way he deems necessary to protect his land, regardless of injury to adjacent property. See Cohen, Water Law in Alabama — A Comparative Survey, 24 Ala.L.Rev. 453, 479 (1972); Surface Water Rights in Alabama, 10 Ala.L. Rev. 154 (1957). The supreme court in Hughes v. Anderson, 68 Ala. 280 (1880), combined both principles in a modified civil rule and held that the owner of higher land has an easement across lower lands for the discharge of “waters which flow naturally, without any act of man.” It then stated that a landowner is permitted, for agricultural purposes, to:
“ . . . drain his ground which is too moist, and discharging the water according to its natural channel, may cover up and conceal the drains through his lands — may use running streams to irrigate his fields, though he thereby diminishes, not unreasonably, the supply of his neighbor below — and may clear out impediments in the natural channel of his streams, though the flow of water upon his neighbor be thereby increased.” 68 Ala. at 285.
Decisions subsequent to Hughes v. Anderson narrowly applied that decision’s qualification of the civil rule allowing a landowner to improve his land at the expense of a lower landowner under certain circumstances. Thus, a person’s land was held to be subservient to adjacent elevated lands only to the extent nature made it subservient, and lower land was required to receive from higher lands only that water which would flow upon it due to the natural terrain. See, e. g. Nininger v. Norwood, 72 Ala. 277 (1882); Crabtree v. Baker, 75 Ala. 91 (1883).
Then in King Land & Improvement Co. v. Bowen, 7 Ala.App. 462, 61 So. 22 (1913), the court of appeals resurrected the liberal doctrine of Hughes v. Anderson that “under some exceptional circumstances” an upper landowner may increase the burden on a lower estate:
“ . . . at a particular point by concentrating into one channel and depositing, at that point, in greater volume and with greater rapidity and more injury than nature, water which had theretofore naturally flowed by divers natural channels over a wider area on the same lower estate.” 7 Ala.App. at 477, 61 So. at 27.
The court characterized the Hughes decision as “asserting a dangerous doctrine, yet one that is essential to promote progress *615 and development.”[1] The factors to be balanced are the benefit derived by the upper landowner opposed to the detriment sustained by the lower landowner. It concluded that the rule with regard to drainage ditches is as follows:
“This exceptional right or ‘license’ in the upper proprietor to thus increase the burden of the lower estate, in this particular, must in all cases be exercised, as said, ‘with a prudent regard for the welfare of his neighbor,’ and itself arises only under exceptional circumstances and conditions; and as to whether they in fact exist and as to whether, if they do exist, they are sufficient to warrant the exercise of the right or ‘license,’ is to be determined by the jury, in each case, under proper instructions from the court, wherein they would be charged with the duty of determining whether the particular drain or ditch, which caused the damage, was necessary to the improvement of the upper land, whether one elsewhere or in some other method would not have reasonably accomplished the same benefit to the upper estate and resulted in no, or less, damage to the lower, and whether the value of the improvement to the upper land, as a result, so outweighed the detriment to the lower in particular and general good as to authorize it, and whether the upper owner in digging and locating and directing on his own land, the drain (first, so shown to be necessary) acted with proper care and regard for the rights of the lower owner, such care and regard as would prevent, if he could do so reasonably and consistently with the purposes in view, and if he could not, as would minimize, as far as he reasonably could consistent with such purposes, the damage and injury to the lower estate.” 7 Ala.App. at 477-78, 61 So. at 27.
In Vinson v. Turner, 252 Ala. 271, 40 So.2d 863 (1949), the supreme court adopted as its opinion the King Land & Improvement Co. decision, thereby conclusively establishing in this jurisdiction the modified civil rule regarding surface water in rural areas.
In light of this line of decisions and Powell v. Edwards, supra, we think the trial court erred in requiring King to maintain the ponds on his property for the benefit of Mrs. Adams. These cases make it clear that an upper landowner is free to interfere with the flow of surface water for the purpose of improving his or her property, as King alleged he did. The only duty an upper landowner owes to a lower landowner when so improving the elevated property is not to unduly burden the lower property by causing unnecessary damage and not to interfere with the lower landowner’s possessory rights. If the upper landowner breaches this duty, then he or she is answerable to the lower landowner for damages. But in no event is the upper landowner required to restore the status quo. That portion of the final judgment requiring King to rebuild his dams within eight months is reversed.
Appellant King next challenges the validity of the jury’s verdict. He says that reversal is required because the jury awarded punitive damages without making a specific award of compensatory or nominal damages. However, King failed to make any objection to the jury’s verdict or the entry of judgment thereon to the trial court by any sort of post-trial motion. Therefore he has failed to preserve any error for our review.
It is axiomatic that a trial court will not be put in error where no objection has been made and it has not had an opportunity to rule on the alleged error. Prather v. Nashville Bridge Co., 286 Ala. 3, 236 So.2d 322 (1970); Southern Cement Co. v. Patterson, 271 Ala. 128, 122 So.2d 386 (1960); Defore v. Bourjois, Inc., 268 Ala. 228, 105 So.2d 846 (1958). Jury verdicts are no exception to this rule. Gipson v. Smith, 261 Ala. 477, 75 So.2d 85 (1954); Life & Casualty Insurance Co. v. Womack, 228 Ala. 70, 151 So. 880 (1933); Patterson v. Irvin, 132 Ala. 557, 31 So. 474 (1902); cf. Hosey v. Robinson, 293 Ala. 194, 301 So.2d 69 (1974).
*616 King next claims that the trial court erred by setting out a penalty of $1,000 per day in the event he failed to close the dams within the time specified by the decree. Since that aspect of the decree is reversed, we do not decide this issue.
King’s final issue is that the evidence is insufficient to support the verdict and judgment. This issue was not argued in brief; therefore we will not discuss it.
The judgment of the trial court is affirmed in part, reversed and rendered in part.
AFFIRMED IN PART; REVERSED AND RENDERED IN PART.
WRIGHT, P. J., and HOLMES, J., concur.

. King Land & Improvement Co. v. Bow n, 7 Ala.App. 462, 475, 61 So. 22, 27 (1913).