This case involves a dispute between upper and lower landowners concerning the diversion of surface water from the upper estate. We affirm.
The appellants, James M. Mitchell, Jr. and his wife Margaret Mitchell, own twenty-two acres of land in Jefferson County on which their residence is located. This property is not within the boundaries of any municipality. Along the southern 50 feet of the Mitchells' property, Alabama Power Company owns and maintains an easement for a transmission line. One of the appellees, James S. Mackin, owned the upper estate immediately south of the appellants' property. Mackin, and the other appellees, W.E. Mills and Mills Building Co., Inc., developed the upper estate and it is now a residential subdivision. The record indicates that subsequent to the filing of this action, the title to the upper estate was transferred from Mackin to Mills Building Co. *Page 685 
The appellants filed a complaint alleging that the drainage system installed to service the appellees' subdivision caused surface water on the upper estate to be diverted and channeled onto their property, resulting in erosion and damage thereto. They sought both money damages and injunctive relief. The appellees, Mackin, Mills and Mills Building Co., filed a third-party complaint against Alabama Power Company alleging that in exercising its easement, Alabama Power Company's equipment and trucks may have been responsible for all or part of the damage to the lower estate. Third-party defendant, Alabama Power Company, then filed a counterclaim for injunctive relief and damages against Mackin, Mills, and Mills Building Co. alleging that the drainage system concentrated and channeled surface water onto the power easement causing erosion and damage.
The case was heard by the trial court sitting without a jury, and at the request of all parties, the court visited the property and examined the terrain, improvements, and drainage system. The trial court found that while there was some damage by erosion of the appellants' land by virtue of the drainage system instituted by the appellee-upper landowner, there was no basis for the recovery by appellants of any damages or for any injunctive relief against the appellees. It is from this judgment that the Mitchells have appealed.
Although the third-party plaintiffs, James S. Mackin, W.E. Mills, and Mills Building Co., Inc., did not file any notice of appeal from the judgment rendered in favor of Alabama Power Company as third-party defendant, Alabama Power is designated as an appellee on the transcript record and on appellants' brief. Alabama Power has filed a motion to dismiss any purported appeal as to them and we consider that motion well taken.
Alabama Power Company contends that an appeal by a plaintiff from a judgment in favor of the defendants does not constitute an appeal from a judgment in favor of a third-party defendant in the third party plaintiffs' action against it.
Historically, this Court has held that where a third-party defendant was brought into a case by a third-party complaint filed by the defendant who did not appeal, the only matter before the Court was that of the original plaintiff who had no claim against the third-party defendant; therefore, the judgment in favor of the third-party defendant should stand.Otts v. Gray, 287 Ala. 685, 255 So.2d 26 (1971).
Therefore, Alabama Power Company is not a party to this appeal, and the motion to dismiss is granted.
We turn now to the merits. Originally, two drainage pipes led from a street in the upper estate subdivision and emptied on the upper estate adjacent to the Mitchells' land. Prior to the construction of this drainage system, the surface water draining from the upper estate flowed over the appellants' property in a widely diffused and natural manner. At trial, Mr. Mitchell testified that before the drainage pipes were installed, there was no erosion on his property. Although this testimony was disputed, the trial court found that the drainage system caused some damage.
Appellants insist that the trial court judgment is erroneous in that the court misapplied the law to the facts. The appellees contend that the trial court applied the law correctly and that the ore tenus rule requires an affirmance of the judgment.
Before attempting to analyze some of the cases it may be helpful to state some of the general rules controlling surface water rights. The early cases recognized two broad general rules: the common law, or common enemy rule, and the civil law rule.
The common law rule permits one to restrict or control the flow of surface water with little or no limitation whatsoever. The proprietor may deal with surface water as he chooses, regardless of the consequence to his neighbor. Under this rule surface water is the enemy and may be dealt with accordingly; thus, the name "common enemy rule" evolved. *Page 686 
The civil law rule provides that one may not interfere with the natural flow of surface water in such a way as to injure his neighbor. This rule is based on the theory that, because water naturally seeks a lower level, the lower land bears a servitude to the higher land to receive only that water which naturally flows from the higher.
Initially, the common law rule prevailed in incorporated cities and towns and the civil law rule prevailed elsewhere. A significant exception was made to the common law rule prevailing in cities in Kay-Noojin Development Co. v. Hackett,253 Ala. 588, 45 So.2d 792 (1950), to the effect that an upper proprietor who collects surface water into a channel and casts it upon the property of the lower proprietor is liable for damages even though the property is in an incorporated city or town. Thus, in cities the lower owner may dam or barricade surface water, but the upper owner may not channelize it so as to injure the lower owner.
In this case we are dealing with property outside a city or town where the upper estate was developed, as in a city, for residential purposes. Thus, we are concerned with the civil law rule or, as some cases have referred to it, the modified civil law rule.
Essentially, the appellants contend for a strict construction of the civil law rule and the appellees for a liberal construction.
As stated earlier, the trial court found some damage by erosion, but nevertheless denied relief under the balancing test alluded to in King v. Adams, 349 So.2d 611 (Ala.Civ.App. 1977).
. . . [A]n upper landowner is free to interfere with the flow of surface water for the purpose of improving his or her property. . . . The only duty an upper landowner owes to a lower landowner . . . is not to unduly burden the lower property by causing unnecessary damage and not to interfere with the lower landowner's possessory rights. . . . [Emphasis supplied.]
349 So.2d at 615.
Appellants argue that the King case is not controlling and is distinguishable on the facts. We agree that the King case is factually distinguishable but that does not necessarily require the conclusion that the trial judge ruled erroneously. The balancing test, or the "exceptional circumstances" rule, was first announced in this jurisdiction in Hughes v. Anderson,68 Ala. 280 (1880), as follows:
 Under these rules, defendant had no right, by ditches or otherwise, to cause water to flow on the lands of plaintiffs, which, in the absence of such ditches, would have flowed in a different direction. As to the water theretofore accustomed to flow on the lands of the plaintiffs, defendant was not bound to remain inactive. He was permitted to so ditch his own lands as to drain them, provided he did so with a prudent regard to the welfare of his neighbor, and provided he did no more than concentrate the water, and cause it to flow more rapidly, and in greater volume on the inferior heritage. This, however, must be weighed and decided with a proper reference to the value and necessity of the improvement to the superior heritage, contrasted with the injury to the inferior; and even this license must be conceded with great caution and prudence. It is a question for the jury to determine, on the facts of each particular case, under proper instructions from the court.
68 Ala. at 286.
The Hughes case is cited in most all the subsequent cases on this subject, but one must observe, with little consistency. Later cases either tended to restrict the rule in Hughes, or ignore it altogether.
Without mentioning all the cases, suffice it to say that the rule in Hughes regained its strength in 1913 in a decision of the Court of Appeals in King Land Improvement Co. v. Bowen,7 Ala. App. 462, 61 So. 22. There was some question whether theKing Land Co. case had settled the matter because of the older Supreme Court case of Crabtree v. Baker, 75 Ala. 91 (1885), which was considered to have severely limited the rule inHughes. *Page 687 
There is almost a total absence of cases on this subject until 1949 when this Court in Vinson v. Turner, 252 Ala. 271,40 So.2d 863, adopted the rule in King Land Co. and Hughes, which unequivocally recognized the liberal application of the civil law rule, or, as it is sometimes called, the modified civil law rule. The Vinson Court held as follows:
 As applicable to the facts in the instant case, we are of the opinion that the case of King Land Improvement Co. v. Bowen, 7 Ala. App. 462, 61 So. 22, 26, is decisive. It was there said:
 "At common law surface water was regarded as a common enemy, and every landed proprietor had the right, as a general proposition, to take any measures necessary for the protection of his own property against its ravages; and the damages resulting in such cases to adjoining owners were regarded as damnum absque injuria, affording no cause of action. Walker v. New Mexico [ S.P.R., Co.], 165 U.S. 593, 17 S.Ct. 421, 41 L.Ed. 837; Chadeayne v. Robinson, 55 Conn. 345, 11 A. 592, 3 Am.St.Rep. 55. This common-law rule yet obtains in many jurisdictions in this country. But not so in this state. 30 Am. Eng. Ency. Law (2d Ed.) p. 330, et seq. Here our Supreme Court long ago adopted, and has ever since continuously followed, the rule of the civil law. This rule is founded in general on a principle of natural right, as embodied in the maxim: `Aqua currit et debet currere, ut solebat,' `Water flows, and as it flows, so it ought to flow,' as modified and restrained, under the necessities of advancing civilization, by that other principle that `the rough outline of natural right must submit to the chisel of the mason that it may enter symmetrically into the social structure.' Hughes v. Anderson, 68 Ala. 280, 44 Am.Rep. 147. Under this rule, while a person's land is subservient to the adjacent lands of a naturally higher altitude, so far as water is concerned, yet it is subservient only to the extent that nature made it subservient; that is, it is required to receive from such higher lands all and only such water as would naturally flow from them upon it by reason of its natural depression. Nininger v. Norwood, 72 Ala. 277, 47 Am.Rep. 412; Crabtree v. Baker, 75 Ala. [91], 92, 51 Am.Rep. 424; Farris v. Dudley, 78 Ala. 124, 56 Am.Rep. 24. The law, however, in the interest of progress and development, under some circumstances does permit the owner of the higher lands, to which the lower land is thus naturally subservient, to control and direct, for purposes of proper drainage, by ditches or other artificial means on his own land, the surface water that naturally flows thereon and from it to the lower land, provided he does not thereby cause more or other water to flow on such lower land then it would naturally receive otherwise, and provided, also, that in so doing, he acts always with a `prudent regard for the welfare of his neighbor.' Under no circumstances is he permitted to increase, but under some circumstances he is permitted to distribute, differently from nature, the total quantity of the water flowing naturally from his own to the lower subservient land, by even `concentrating it and causing it to flow more rapidly and in greater volume upon the lower land.' Hughes v. Anderson, 68 Ala. 280, 44 Am.Rep. 147."
252 Ala. at 272-73, 40 So.2d at 864-65.
The appellants contend that the instant case is controlled byKay-Noojin Development Co. v. Kinzer, 259 Ala. 49, 65 So.2d 510
(1953). We agree the facts are very similar, but we note the damages to the lower landowner were substantially more extensive than in the instant case. We think it is important to notice, in attempting to reconcile the cases on this subject, that appellate courts generally affirm the trial court because of the ore tenus rule.
Admittedly, some of the cases do not seem reconcilable. The vagaries in this area of the law seem to be the result of the generally stated rule that each case must be decided on the particular or peculiar facts present, coupled with the equity conscience of the trial court. It is readily discernible from reading the cases that no two are *Page 688 
exactly alike. It could be argued that a more definite rule is needed, but rigid rules tend ultimately to work injustices. On this subject we quote certain pertinent observations appearing in Comment, Surface Water Rights in Alabama, 10 Ala.L.Rev. 154, 166-69 (1957):
 From the foregoing review of the decisions of this state on the problem of surface water rights, it is possible to draw several relatively clear conclusions. And yet certain inconsistencies exist which render it difficult to set out a definite statement of the present state of the law. It can safely be said that the Civil Law Rule is the rule in Alabama as this has been repeatedly stated by the court. However, with respect to rural areas, there is authority which would allow an upper owner to collect surface water into a single drain and precipitate it upon the adjoining inferior land, provided he does not thereby burden the lower estate with water which would otherwise have flowed in another direction or upon the land of a third party, and provided he has acted with a prudent regard for the welfare of the lower owner. This exception to the strict rule, it would seem is not a right, but a privilege — a concession granted by the court in the interests of progress and development — which is to be allowed at the discretion of the jury upon a comparison of the benefit to the superior heritage and the resulting injury to the inferior. Even though the more recent cases recognize this exception there is authority to the contrary. . . .
* * * * * *
 Alabama is by no means alone in its dilemma concerning this problem. Regardless of whether a state claims the Civil Law or the Common Enemy Rule, problems arise. The Civil Law Rule, strictly applied, would prohibit any development of the land or change of the natural state whatsoever, where as the Common Enemy Rule would allow neighbors to unreasonably injure each other without liability. Although most jurisdictions claim one or the other of these rules, none follow the rule so claimed without some modification. It seems that Alabama is in accord with many jurisdictions in that the Civil Law jurisdictions tend to recognize that it is desirable to allow one to alter the flow of water in the interests of improvement, and the Common Enemy states have tended to curtail the right to discharge water in unlimited amounts upon the land of another.
 The adoption of the Civil Law Rule by Alabama is no doubt a result of the fact that at that time the state was predominantly agrarian and that rule is best fitted to an agrarian society which assumes land as remaining in a natural or near natural state. On the other hand, the Common Enemy Rule is better fitted for the development of cities and towns and was thus adopted by those jurisdictions more urban in nature. Although this state can still be said to be predominantly agrarian, the interest in industrial and urban development has been increasing steadily and this increase may result in a swing toward more exceptions to the strict rule. . . .
* * * * * *
 As to the benefit of such a change there is some question, and its overall effect would be difficult to predict. It has been stated that any deviation from the strict rule results in confusion and more litigation due to the uncertainty of the parties as to their rights, but the theory has been expressed also that the logical step is to strike the middle road "between the consistent but inhuman lex and the benevolent but uncertain jus." It is true that a strict rule with no deviation would establish the rights of the parties and allow them to act in accordance with the rule, but the problem is that neither of the strict rules will allow both development and, at the same time, protection from unreasonable diversion of the natural flow. Any deviation from the strict rule, however, tends toward decisions being rendered on the facts of *Page 689 
the particular case, and this is undesirable from the standpoint of the individual who wants to alter the now and yet has no yardstick with which to determine just how much he can alter the now and still be within the bounds of reasonable use. Regardless of the disadvantages, however, it seems that the trend is toward decisions on this point being rendered on a weighing of the facts of each case, a trend which is manifested already by some of the cases decided by the courts of this state.
We are of the opinion that the modified civil law rule is alive and well in this jurisdiction. We respectfully admonish the trial bench to apply it sparingly and under the conditions noted in the above cited cases.
Because the trial judge personally viewed the property, and because there is competent evidence to support his findings, the judgment must be upheld.
The judgment of the Circuit Court is therefore affirmed.
AFFIRMED.
All the Justices concur, except EMBRY and FAULKNER, JJ., who dissent.